(No. 20374.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND MILLER, Plaintiff in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 4, 1931.*

HAROLD L. LEVY, (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and CARL I. DIETZ, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On July 23, 1928, Philip Keller and plaintiff in error, Raymond Miller, were jointly indicted for larceny by the Cook county grand jury. Keller was convicted and sentenced to the penitentiary on May 17, 1929. On June 6, 1930, plaintiff in error was convicted and sentenced to the penitentiary for from one to ten years, and he seeks review of the record.

Gabriel F. Slaughter testified that he was vice-president of the American Steel Foundry Company; that on April 4, 1928, he owned a Chrysler "70" sedan, with two extra tires mounted on extra wheels, one on each side of its front fenders; that he purchased it at the Riviera Motor Sales; that all the wheels of the car, including the two extra ones, were wire and were painted a special red color that witness had ordered; that the finish of the wheels was dull and not a varnish; that he changed the locks which were on the car when he bought it and the extra wheels were locked on with a special lock which was not a Johnson lock and which was not put on at the Riviera Motor Sales but at a special place; that about 7:00 o'clock on the evening of April 4, 1928, witness parked the car on the south side of Sunnyside avenue, Chicago; that when he next saw the car, about 9:35 that same evening, the wheel, tire and lock on the right-hand side of the car were gone; that witness thereupon went to the police station at Addison and Halsted streets, where he met officer Bellack and reported the theft; that a few minutes later, at the station, in the presence of Bellack, he went into a vault where there were tires and saw his tire, which he identified by the special lock, and that he took his key out of his pocket and then

and there unlocked it. Slaughter gave a detailed description of the special lock and indicated how it was sawed off when he got it back.

Gustave Bellack, a police officer, testified that he arrested plaintiff in error on the evening of April 4, 1928. The question was put to him, "Will you tell us the circumstances under which that arrest was made?" Counsel for plaintiff in error interposed, "I object, if the court please." The objection was overruled. In answer to several questions which then followed, without further objection, Bellack testified that about 9:30 on the evening of April 4, 1928, in front of 3912 Pine Grove avenue, Chicago, he saw two cars parked double; that when he was fifteen or twenty feet away he saw a Chrysler car with bright lights on, facing south; that when he got in front of it he saw a man placing a tire in its rear seat, and that this man was plaintiff in error. In response to the direction, "Go ahead," Bellack then stated: "I was in front of the car and I threw my coat over to one side and showed my star and hollered, 'Police officer!' Just then the driver behind the wheel of the car stepped on the gas and tried to run over me. I jumped over to one side and I had my gun in my hand and I hollered, 'Police officer!' two or three times and for them to halt, but they didn't stop, and I shot right into the car, and they crashed into another car and they stopped and I searched Miller. Then I had a citizen call for the patrol wagon, and it came over shortly and I put the both of them into the patrol wagon. I locked Miller up at the Town Hall station and the other fellow went to the Bridewell Hospital. I drove their Chrysler car into the station, and after I got there there were about four or five tires in the car." Counsel for plaintiff in error then said, "I object and move that it be stricken from the record." The court overruled the objection. Bellack also testified that he put all the latter tires in the vault; that about fifteen or twenty minutes later Slaughter came in and reported his tire stolen, and

that he took Slaughter to the vault, where the latter picked out his tire, took a key out of his pocket and opened the lock. Bellack further testified that Slaughter's wheel was red, and without objection answered that the wheel and tire thus identified by Slaughter were the ones found by witness in the automobile of plaintiff in error. He was then asked, over objection, "Was that the tire, wheel and tube that you saw Miller putting in the car when you approached him?" and his answer was, "No, sir."

Ray Weirsing, a police officer, testified that he arrested plaintiff in error on May 5, 1930, at Victory, Kentucky, and brought him back to Chicago.

Plaintiff in error denied that he committed the theft with which he was charged. He testified that on April 4, 1928, he owned a Chrysler "72" automobile with red wire wheels which he had bought at the Park View Motor Sales; that two extra red wire wheels were on the sides of the car, locked with Johnson locks; that he and Keller had been at the Riviera Motor Sales for an hour and a half that evening to trade witness' car for an Imperial, called an "80," and that after leaving there they drove to Pine Grove avenue. The following questions and answers then appear in sequence:

Q. "Who got out of the car, if anybody?
A. "Phil Keller.
Q. "Did you get out of your car at all?
A. "No, sir.
Q. "Who was driving that car?
A. "Phil Keller.
Q. "Where did Keller go to?
A. "He went to see some girl.
Q. "Did you ever meet the girl?
A. "No, sir.
Q. "How long was he in there?
A. "Five minutes.
Q. "When he came out, what did you do, if anything?

A. "I got in the car.

Q. "When you got in did you start off?

A. "He stepped on the starter and went."

Plaintiff in error further testified that when the car started Bellack came running across the street with pistol in hand and shot Keller; that Bellack did not holler "Police officer!" that after the collision with the other car Bellack told witness to get out and put his hands up, saying he thought he had shot witness and that he knew witness— that he was Ray Miller; that witness was taken to the station and locked up; that his keys were left in the automobile, sticking in the lock; that he got back only the ignition key, and that when he got out of the station both of his spare wheels were gone.

On cross-examination plaintiff in error stated that when the case was called on May 16, 1929, he was in Indianapolis; that he knew then that his bond had been forfeited; that on April 4, 1928, he did not live on the North side; that he bought his car at Grand avenue and Sacramento from another motor sales but intended to trade it off at the Riviera Motor Sales; that after leaving the Riviera Motor Sales Keller drove from there, without stopping, to the spot on Pine Grove avenue where the car was parked; that it took about ten or fifteen minutes to get there; that he waited in the car five minutes for Keller to come out and that he had not been out of the car at all. The record then shows the following:

Q. "As a matter of fact, just before the officer came over weren't you carrying a tire and putting it in the back of your car at that time?

Mr. Levy: "I object.

The court: "Overruled.

Mr. Levy: "Exception.

A. "No.

Mr. Brown: "Wasn't that tire from a Nash car?

A. "No, sir.

Q. "And wasn't that tire taken from the Nash car—the back of the car that was standing right next to the one where you were parked?

Mr. Levy: "I object.

The court: "Sustained.

Mr. Levy: "Exception to the question.

Mr. Brown: "Where did you get the four tires that were in the back of the car?

Mr. Levy: "I object.

A. "Didn't have four tires.

Mr. Brown: "Did you have any tires that were parked in the back of the car at that time?

Mr. Levy: "I object.

The court: "He may answer.

Mr. Levy: "Exception.

A. "Yes, sir.

Mr. Brown: "Did you have any tires in the back of the car at that time—anywhere in the car? Let's not be technical.

A. "Two I had on the sides.

Mr. Levy: "I object, if the court please.

The court: "Strike out, 'Let's not be technical.'"

In the argument of plaintiff in error only two points are made. The first is that the trial court committed error in allowing the People to introduce in evidence incompetent and prejudicial testimony which showed the commission by plaintiff in error of other independent crimes. The second is that the evidence fails to establish guilt beyond a reasonable doubt. The argument on the second point is prefaced by the statement that the errors in permitting incompetent testimony were particularly prejudicial to the rights of plaintiff in error because the evidence in the case is "very close." The theory upon which the closeness of the evidence appears to be based is that (1) the extra wheels and tires alleged by plaintiff in error to have been on his car were stripped from it and taken to the vault of the police station before Slaughter got there; (2) that Slaughter in

fact picked out not his own tire but one of the two belonging to plaintiff in error; and (3) that Slaughter's key fitted the lock on the tire belonging to plaintiff in error thus picked out. As a corollary to this theory it is strongly urged that "the only satisfactory identification" of Slaughter's tire could have been made by producing its serial number from a "sales slip" or "memorandum book." The difficulty with this theory is that there is no evidence whatever tending to show that the two tires alleged to belong to plaintiff in error were taken to the vault of the police station before Slaughter arrived there or at any other time, and there is, on the other hand, positive evidence tending to show that the locks on Slaughter's tires were not the same as those on the tires of plaintiff in error. So far as the contention as to necessity of identification by serial number is concerned, recognition cannot be accorded to a rule purporting to lay down any such a requirement as plaintiff in error suggests. It is the province of the jury to determine the credibility of the witnesses testifying in the case and to determine whether a fact alleged or crime charged has been proven. (*People* v. *Delorenzo,* 300 Ill. 124.) Where the evidence is conflicting this court will not substitute its judgment for that of the jury. There was sufficient evidence in this case to convict, and it cannot be said that the verdict is palpably contrary to the weight of the evidence or that the evidence is so unreasonable, improbable or unsatisfactory as to justify a reversal of the judgment on that ground. (*People* v. *Herbert,* 340 Ill. 320; *Barron* v. *People,* 73 id. 256; 1 Wigmore on Evidence—2d ed.—par. 276.) It may be said, moreover, that on the evidence here disclosed the jury could not reasonably have brought in any other verdict than guilty.

In support of the point that error was committed in allowing the introduction of incompetent and prejudicial testimony plaintiff in error calls attention to the testimony of officer Bellack regarding the circumstances of the arrest.

The question put at the trial called upon the officer to "tell us the circumstances under which that arrest was made." To this question counsel for plaintiff in error interposed a general objection. There was nothing inherently improper in the question, (*People* v. *Gallina,* 335 Ill. 270,) and the objection thus made was properly overruled. Several more questions were then put to Bellack without objection, and he testified that he saw a man whom he identified as plaintiff in error placing a tire in the rear seat of his car. In response to the request, "Go ahead," to which no objection was interposed, he gave the lengthy answer quoted above, in the course of which he stated that he showed his star and hollered, "Police officer!" that the driver of the car "stepped on the gas" and tried to run over him; that he hollered several times for the occupants of the car to halt and fired when they did not; that the car crashed into another and stopped; that he searched plaintiff in error; that he had a citizen call the patrol wagon; that he put both of the occupants of the car in the patrol wagon; that he locked plaintiff in error up at the station; that he drove the car to the station, and that when he got there there were four or five tires in it. At the completion of this answer counsel for plaintiff in error said, "I object and move it be stricken from the record." The substance of the answer was undeniably unobjectionable, in part at least, if not in its entirety, (*People* v. *Gallina, supra; People* v. *Durkin,* 330 Ill. 394; *Jamison* v. *People,* 145 id. 357; *McKevitt* v. *People,* 208 id. 460;) and we cannot say that the record discloses any error in the overruling of the motion. (*People* v. *Walczniak,* 273 Ill. 76; *People* v. *Bopp,* 285 id. 396; *People* v. *Cardinelli,* 297 id. 116.) Bellack having testified that at the time of the arrest he saw plaintiff in error placing a tire in the car belonging to plaintiff in error, and having further testified that Slaughter's tire was subsequently found in that car, it was clearly material to bring out whether the tire thus actually handled by plaintiff in error

was the same one that Slaughter identified. Consequently there was no error in overruling the objection to the question as to whether the tire identified by Slaughter was the one that Bellack saw plaintiff in error putting in the car.

The further argument on the point of admission of improper testimony centers around the cross-examination of plaintiff in error by the State's attorney. Assuming the assignment of errors is broad enough to cover challenges to statements made in answer to questions put on cross-examination, it is not apparent that any error was committed. The cross-examination of witnesses is for the purpose of ascertaining what the truth of the matter under investigation is, and the latitude allowed for this purpose rests very largely in the discretion of the trial court, and where there has not been a clear abuse of the discretion this court will not disturb the judgment below. (*People* v. *Harris,* 263 Ill. 406.) As the court said in *Commonwealth* v. *Kaplan,* 238 Mass. 250, 130 N. E. 485: "In the practical administration of justice the presiding judge, especially in a criminal case, must be given a broad discretion as to the extent and scope of legitimate cross-examination." A defendant in exercising his right to become a voluntary witness subjects himself to all the rules under which the testimony of witnesses may be probed by cross-examination. (*Spies* v. *People,* 122 Ill. 1; *Reagan* v. *United States,* 157 U. S. 301; *Raffael* v. *United States,* 271 id. 494; *People* v. *Hinksman,* 192 N. Y. 421; *Commonwealth* v. *Morgan,* 107 Mass. 199.) A defendant on cross-examination may be asked about details which would throw light upon the essential facts referred to in the examination in chief, and if such witness attempts to relate what occurred on a given occasion and omits some details and features of what happened, such facts may be brought out on such cross-examination. (*State* v. *Zdanowicz,* 69 N. J. L. 619, 55 Atl. 743; *State* v. *Smith,* 228 S. W. (Mo.) 1057; *State* v. *Likens,* 231 S. W. (Mo.)

578.) Reference to the testimony given by plaintiff in error on his examination in chief shows that he undertook to account for his whereabouts and doings on the evening of his arrest, and especially during the few moments immediately preceding the arrest itself. After stating that for an hour and a half he had been at the Riviera Motor Sales and came from there to the address on Pine Grove avenue, he proceeded to detail what happened.on Pine Grove avenue. In one breath he stated unequivocally that he did not get out of the car at all, and in almost the next breath he said that he got in the car when Keller came out of the building. It was clearly the right of the People to probe this situation, to the end that the truth in the matter might be arrived at and that what plaintiff in error actually did do there might, if possible, be rendered intelligible. Plaintiff in error having himself opened the door for inquiry as to whether he remained seated in his car or was out of it, (*People* v. *Yates,* 339 Ill. 421; *People* v. *Munday,* 293 id. 191; *Wilson* v. *United States,* 232 U. S. 563;) the court did not err in permitting the question designed to bring out that plaintiff in error, because he was carrying a tire and putting it in the rear seat, was necessarily out of the car. No objection was made to the question as to whether the tire was from a Nash car. Objection was made to the question as to whether the tire was from a Nash car standing alongside. Even though this objection had been overruled, under the situation presented the absolute relevancy of the question cannot be denied. The objection was, however, sustained and no evidence was brought into the record by the question. Objection was made to the question as to where plaintiff in error got the four tires that were in the back of the car, but no ruling was made on the objection and plaintiff in error answered denying that he had four tires, or any others, in his car other than the two extra ones on the sides, which belonged to him. We are unable

to see that the trial judge abused his discretion in any of the rulings thus disclosed of record.

The judgment of the criminal court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*