(No. 22509.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARGARET MARVIN, Plaintiff in Error.

*Opinion filed October 24, 1934—Rehearing denied Dec. 13, 1934.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

On April 4, 1933, after 11:00 o'clock P. M., chief of police Jones of the village of LaGrange Park, in Cook county, saw an automobile parked without lights about one hundred feet off of Mannheim road. A man and a woman were sitting in it, and because of its having no lights and the officer recognizing that it was a strange car in town, he circled the block and came back to have another look at it. At that time it moved off, and because of his suspicions the policeman wrote down the license number. A few minutes later he received a report that a burglary had been committed within a short distance of where this car had been parked. He thereupon investigated the license number and discovered that it had been issued to Agnes Bagley, 1539 Fifty-ninth court, Cicero, Illinois. Inquiry at that address disclosed that no one by that name lived there and he thereupon posted a look-out message for the car. A month later, May 4, 1933, while cruising with another officer, he saw the same automobile with the same license plate. The car, which was then being driven by the defendant herein, was stopped by the officers and inquiry made of the driver as to its ownership. She informed them that she owned it and that she lived in Downers Grove. On looking in the car officer Jones noticed that it contained a considerable quantity of merchandise in the rear and also two or more coats and some other merchandise piled upon the front seat. He thereupon arrested the defendant and took her to the police station, where a further investigation of the automobile revealed a large quantity of what were afterwards proved to be goods stolen from the Sears-Roebuck & Co. store at 1900 Lawrence avenue, Chicago. The defendant was indicted, tried and convicted on a charge of grand larceny for the theft of some of these goods, and it is to review that conviction that this writ of error is sued out.

Before the commencement of the trial, a motion, supported by affidavit, was made by the defendant to suppress that part of the evidence which consisted of the articles found in her automobile, it being contended that her arrest was illegal and that the search of her car was in violation of her constitutional rights. The overruling of this motion is assigned as error. The ruling of the trial court on this point was right and is clearly sustainable on a number of grounds. In the first place, we must again point out, as we have repeatedly held, that the constitutional prohibition does not extend to all searches and seizures but only as a guard or shield against unreasonable ones. (*People* v. *McGurn*, 341 Ill. 632; *People* v. *Patterson*, 354 id. 313.) Here the officer in the regular performance of his duty had become informed that this particular automobile was carrying a license plate issued in the name of Agnes Bagley at a certain address and that no such person was known or lived there. It was not unreasonable—in fact, it was in line with a conscientious performance of his duty—for him to stop this car and inquire as to its ownership. In the second place, there was no search involved in the transaction. A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. A search implies an invasion and quest with some sort of force, either actual or constructive. (*Combest* v. *State*, 239 Pac. (Okla.) 936; *State* v. *Hilton*, 110 Ore. 441, 249 Pac. 1103.) While the constitutional limitation on searches must necessarily apply to all persons alike, whether guilty or innocent, it is incumbent upon us to remember that it was primarily intended as a shield to the innocent rather than as a refuge for the guilty. In this particular case it would be a distortion of that salutary purpose to so far extend the meaning of the provisions of section 6 of article 2 of the constitution as to defeat the ends of justice. The trial court did not err in overruling the motion to suppress this evidence.

The other errors which are argued by the defendant concern the evidence, and hence a short statement of the facts becomes necessary. A special officer for Sears-Roebuck & Co. identified the lace curtains and woman's coat which had been found in defendant's car as the property of Sears-Roebuck & Co. and coming from that company's store at 1900 Lawrence avenue. He also testified that a coat and some curtains were missing from the store on their check-up on the night of May 4, 1933, the date of defendant's arrest. Grace Nagel testified for the People that she was a house detective for Sears-Roebuck & Co. at the store at 1900 Lawrence avenue and was so employed on May 4, 1933; that she was familiar with the merchandise in those departments, and that she had seen the curtains in question in that store on May 4, 1933, at about 2:00 o'clock P. M., and that she left work that night about 9:00 o'clock and that they were not there at that time. She further testified that the curtains offered in evidence were the property of Sears-Roebuck & Co. and that they were not sold; that the coat offered in evidence was in the store on the morning of May 4, 1933, and was missing when they checked up that evening about 9:00 o'clock P. M., and that the coat was the one that was missing and the property of Sears-Roebuck & Co., and that it was of the value of $19.75. Alexander Gordon testified for the People that he was an employee of Sears-Roebuck & Co., a checker at their warehouse. He identified the merchandise by purchase orders, and testified that the curtains were received from a certain mill and turned over to the store at 1900 Lawrence avenue, and that he recognized them by their patterns and numbers. Anna Matson testified that she was in charge of the curtain department at the store in question, had been there five years and was on duty and in charge on May 4, 1933, and that it was part of her duty to check the merchandise that arrived in that department and place it in stock. She said that the curtains in ques-

tion were received and placed in stock the last week in April, and that she had shown some of them to a customer about 4:00 o'clock on the afternoon of May 4, 1933. She further testified that she checked the curtains in that department on May 4 at the close of business and that they were not there and that she had seen them at 4:00 o'clock. Marie Modes testified for the People that she was manager of the ready-to-wear department of Sears-Roebuck & Co. and had been for six years; that she saw the coat in question on May 4 at about 6:00 o'clock in the evening, while the defendant herein was looking at it; that she walked up to the defendant and talked to the sales lady who was waiting on her; that she did not know whether or not the coat was sold to the defendant, but she was able to identify the garment because it was the only one they had in stock that was just like it and that it had the same tag and string on it. She further testified that it was a part of their course of business to place a blue tag with a perforated stub upon each garment, tearing off the stub when the garment was sold, for the purpose of keeping their records; that on the morning of May 5 they checked up and the stub for that particular coat was not on the list that was checked and that there was not any stub to indicate that the coat was sold.

In her own behalf the defendant testified that her right name is Agnes Dvorak and that she lived in Downers Grove; that before that she lived at 1228 Wesley avenue, in Berwyn, for six years and at 1718 Morgan street for fourteen years. It was her story, entirely uncorroborated, that she had obtained all of the merchandise in question from some people by the name of Murray, who had told her that they had obtained it at an American Express auction; that the Murrays turned the merchandise over to her and asked her to try and sell some of it for them. She denied having been in the Sears-Roebuck & Co. store on the date in question and denied taking anything from that

store. She stated her husband had purchased some merchandise at Sears-Roebuck & Co.'s store and that some of it was in the car but that she did not buy anything.

The first error urged by the defendant is that police officer Jones was permitted to testify that besides the twenty pairs of lace curtains and other articles mentioned in the indictment he found certain other articles of wearing apparel in the defendant's car. This point, however, is not open to review, as the only objection made to the testimony upon the trial was that set forth in the motion to suppress the evidence hereinabove mentioned.

It is also urged that the court erred in permitting a witness by the name of Gutenkauf to testify that the curtains in question were the property of Sears-Roebuck & Co., when upon cross-examination it developed that certain parts of his knowledge were based upon hearsay. This error is of no importance, however, as the testimony of other witnesses sufficiently established this point, and the hearsay testimony inadvertently admitted was, at most, cumulative.

Complaint is also made as to certain limitations upon the cross-examination of witnesses, but we are unable to perceive that the defendant was in any way prejudiced by any ruling of the court in this respect; and this is a matter within the discretion of the trial court, upon which a reversal cannot be based unless the defendant has been prejudiced or deprived of a fair trial. *People* v. *Miller,* 342 Ill. 244; *People* v. *Jones,* 343 id. 291.

The evidence in this case establishes the defendant's guilt beyond any reasonable doubt. No error is pointed out which deprived her of any legal right or could have affected the result of the trial, and under such circumstances we will not reverse the judgment of the trial court. *People* v. *Burger,* 259 Ill. 284. *Judgment affirmed.*