## GIBSON v. UNITED STATES.
## O'KELLEY v. SAME.

Nos. 8832, 8833.

United States Court of Appeals
District of Columbia.

Argued Feb. 13, 1945.

Decided April 16, 1945.

Mr. Henry Lincoln Johnson, Jr., of Washington, D. C., for appellants.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Ray L. Jenkins, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, C. J., and EDGERTON and ARNOLD, JJ.

GRONER, C. J.

These are appeals from judgments of conviction for violation of the marihuana tax law. Marihuana is defined by the Texas Court of Criminal Appeals as a volatile drug, most often taken in the form of a smoke, and when so taken induces a high exhilaration, often motivating brutal criminality.[1] In a Utah case it is said to have been introduced into this country from Mexico,[2] but it is now known to flourish as a weed in most of the Southern and Southwestern parts of the United States. Among certain classes of drug addicts its use has largely supplanted cocain, which under present conditions is more difficult to obtain. In 1937 Congress passed a comprehensive act,[3] intended to prevent its acquisition except under special conditions provided in the act, which include the use of certain official blank forms and the payment of a large tax. Proof that any person has in his possession any marihuana, without having and producing the order form required by the act to be retained by him, is presumptive evidence of an unlawful transfer in violation of the act.[4]

Appellant O'Kelley was indicted in two counts, the first, for having unlawfully acquired in the District of Columbia a quantity of marihuana (viz.: 50 marihuana cigarettes), without having paid the tax; the second, for having unlawfully acquired 387 marihuana cigarettes, 7 ounces and 24 grains of marihuana seeds, and 354 grains of marihuana, without having paid the tax.

Appellant Gibson was separately indicted in a single count, charged with having unlawfully acquired in the District of Columbia 36 marihuana cigarettes without having paid the tax.

The indictments were consolidated for trial. Within a reasonable time after the finding of the indictments appellants moved in the District Court to suppress the evidence of possession, on the ground that such evidence was obtained as a result of unreasonable search and seizure. The trial judge overruled the motion and appellants were thereafter convicted on all counts and sentenced.

A short statement of the evidence follows: Narcotic Agents, having reason to believe that a person named Burch Williams was unlawfully dealing in marihuana, sent an "informer" to a house they believed to be occupied by Williams on New Jersey Avenue. They watched and saw a man they believed to be Williams come to the front door and observed "something" pass between him and the informer. A short time later the informer turned over to them two bundles of marihuana cigarettes, which they believed he had not had before he saw Williams. A week or so thereafter they secured a warrant of arrest for Williams and at 2 o'clock in the morning of March 26, 1944, went to the New Jersey Avenue house, seven strong, knocked on the door, and when it was opened by appellant Gibson, the leader of the raiders told Gibson he was an officer, exhibited his badge and said they had a "warrant." Gibson stood aside and they entered the ground floor apartment of the house. In the living room they found a number of people—men and women—eat-

---

[1] Baker v. State, 123 Tex.Cr.R. 209, 58 S.W.2d 534.

[2] State v. Navaro, 83 Utah 6, 26 P.2d 955.

[3] 50 Stat. 554 (1937), 26 U.S.C.A.Int. Rev.Code, § 2590 et seq.

[4] 26 U.S.C.A.Int.Rev.Code, § 2593 (a): "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 2590 (a) to acquire or otherwise obtain any mari-

huana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590 (a)."

ing and playing cards. They did, not find Williams, nor did they enquire about him, but instead asked Gibson, whom they had never seen before, to show his draft card, whereupon Gibson pulled a handkerchief from his pocket, from which something dropped, which they recognized as a marihuana cigarette. They picked it up and later, upon examination by the chemist, it was found to contain marihuana. They then asked whose apartment they were in, and were told that it belonged to the other appellant, Roy O'Kelley, who was then asleep in an adjoining bedroom. The officers told O'Kelley's wife to notify him to come out, and when he did and had stated that the apartment was his, they asked him if there was any marihuana in the house, and when he replied "no," they asked if he "minded if they looked around to see if there was any," and that O'Kelley told them "to go ahead." They then broke open a record player cabinet and found a paper bag containing 50 marihuana cigarettes and asked O'Kelley if they were his. He replied they were, but that he had them only for his own use. They thereupon arrested O'Kelley and Gibson and took them to the station house.

■ At this point, enough has been said to show very clearly that the entrance of the officers into the house was illegal. They obtained entrance by showing their badges and stating that they had a warrant—obviously implying a search warrant—which was untrue. What they had was a warrant of arrest for a man who was not in the house and, so far as the record shows, had no connection with the house and no association with it, save that the officers on some previous occasion believed they had seen him at the front door.[5] And as it turned out, they had entered another person's house, against whom they had no charge or suspicion of any kind, by resort to a subterfuge, and their subsequent search on the theory of consent, which appellant O'Kelley on the hearing on the motion to suppress denied was ever given, can be considered as consent only under compulsion. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Farris v. United States, 9 Cir., 24 F.2d 639, certiorari denied 277 U.S. 607, 48 S.Ct.

602, 72 L.Ed. 1012; United States v. Slusser, D.C., 270 F. 818. For it abundantly appears that before O'Kelley emerged from his bedroom, in response to the demand of the officers, the latter had picked up from various parts of the room a considerable quantity of marihuana cigarettes. Confronted with this situation and the statement of the officers that they had a warrant, the consent wrung from him was without effect on his constitutional rights, and as Judge St. Sure said in a similar case,[6]—"There is no doubt but that defendant was influenced by his situation, and, when all the surrounding circumstances are considered in their true relations, not only is the claim that consent was voluntary overthrown, but the impression is irresistibly produced that it must necessarily have been the result of either hope or fear, or both, operating on the mind."

■ Or, as we said in Nueslein v. D. C., 73 App.D.C. 85, 89, 115 F.2d 690, 694: "Before a court will hold that a defendant has waived his protection under this [IVth] Amendment, there must be convincing evidence to that effect. * * * That rule should not be narrowed even though an admission or confession is obtained. Officers should not be encouraged to proceed in an irregular manner on the chance that all will end well. In the instant case it is difficult to find the time when it would have been appropriate for the defendant to resist, acquiesce in, or invite the illegal search. He never had a chance to meet the officers at the door. When later the defendant became aware of his uninvited guests * * * it is requiring too much to say, with the wisdom of hind sight, that he should have insisted upon their departure. His rights had been violated before he confronted the officers. He may never have heard of the IVth Amendment. Undoubtedly, he had even less of an idea as to the method that would insure its continuing protection. * * * On this record we cannot say that the defendant waived the infringement of his IVth Amendment rights."

■ If this were all, the conviction of O'Kelley would have to be reversed under the rule so emphatically laid down by the

---

[5] We do not mean to say that an officer who has a warrant for the arrest of A, and who reasonably believes that A is in the house of B, may not, after demanding admittance and giving due no-

tice of his warrant, force entrance in order to search for and arrest A.

[6] United States v. Baldocci, D.C., 42 F.2d 567, 568.

Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, and Agnello v. United States, 269 U. S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409. But the evidence given by the Government officers at the hearing on the motion to suppress, and not denied at the trial, shows that after O'Kelley was arrested and taken to Police Headquarters he was asked if he was willing to surrender another supply of marihuana which the officers believed he had in an apartment on Providence Street, and that he replied if they would go with him to the Providence Street apartment he would turn over to them a supply he had there. As a result, they accompanied him to the apartment and into a bedroom, whence he got and handed to the officers a box containing fifteen bundles of marihuana cigarettes, a small box filled with bulk marihuana and another small box containing marihuana seeds; and later, presumably after his release on bond, he voluntarily came to the office of the agents and stated to them that the marihuana which had been seized on New Jersey Avenue and that which had been delivered by him from the Providence Street address were kept by him for the purpose of sale, and that he obtained his "supply" from someone "out West." Why he volunteered this information does not appear, possibly it was to shield someone else, but all of that is left to speculation. The marihuana obtained by the officers from the Providence Street house was the basis of the second count of the indictment against O'Kelley, and his statements to the officers following his arrest and his other statement the next day were, as he admitted, entirely voluntary, and though when the first statement was made he was under an illegal arrest, we think that fact does not require the rejection of evidence volunteered by him for reasons sufficient to himself and made without force or compulsion or promise of reward. And if this is correct, obviously, conviction on the second count of the indictment must be sustained, Putnam v. United States, 162 U.S. 687, 714, 16 S.Ct. 923, 40 L.Ed. 1118, since the testimony concerning the first count, in the circumstances we have narrated, was

harmless, in that it added nothing to the self-incriminatory facts shown on the second count, and therefore is not so prejudicial as to necessitate a reversal as to both counts. Farris v. United States, 9 Cir., 24 F.2d 639, certiorari denied 277 U.S. 607, 48 S.Ct. 602, 72 L.Ed. 1012.

■ What has been said in relation to the illegality of the seizure from the New Jersey Avenue apartment is not, however, controlling in the case of appellant Gibson. It was not his home that was invaded and there was no molestation of his person on that occasion. In his case there was no violation of the IVth Amendment, and the settled doctrine is that objection to evidence obtained in violation of the prohibitions of that Amendment may be raised only by one who claims ownership in or right to possession of the premises searched or the property seized, and does not extend to the relief of a co-defendant. Shore v. United States, 60 App.D.C. 137, 49 F.2d 519, certiorari denied 283 U.S. 865, 51 S.Ct. 656, 75 L.Ed. 1469; Kelley v. United States, 8 Cir., 61 F.2d 843, 86 A.L.R. 338; Holt v. United States, 6 Cir., 42 F.2d 103 and cases therein cited; see, Agnello v. United States, 269 U.S. 20, 35, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Goldstein v. United States, 316 U.S. 114, 121, 62 S.Ct. 1000, 86 L.Ed. 1312.

■ When the officers entered and witnessed Gibson's effort to throw away the cigarette which they believed to contain the proscribed drug, they had reasonable grounds for suspecting the commission of a crime (the unlawful possession of marihuana), and his arrest was accordingly valid and in accordance with their duty. This was not in any way lessened or circumscribed by the fact that they were unlawfully on the premises of another person.

We are of opinion that the court erred in admitting in evidence against O'Kelley the marihuana seized in his residence on New Jersey Avenue, and that his conviction and sentence under the first count of the indictment were improper.

■ The rule is that a general or gross sentence will be sustained on appeal, although error warranting reversal as to one count is found, if the remaining count or counts will support the sentence.[7] Similarly, where separate sentences are im-

[7] Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173; Whitfield v. Ohio, 297

posed to run concurrently the judgment will not be set aside, although error may have been committed under one count.[8] However, O'Kelley's sentences were sixteen months to four years and a fine of $500.00 on the first count, and sixteen months to four years (without a fine) on the second count. In these circumstances, therefore, it becomes necessary to depart from the general rule, which would affirm the entire judgment, and to reverse the conviction, sentence and fine under the first count and award O'Kelley a new trial under that count (which, in the light of what we have said, we assume will not be asked by the Government). We accordingly affirm his sentence on the second count which, as we have indicated, was in no wise affected by the error committed on the first count.

The conviction and sentence of Gibson, for the reasons stated, were valid and are accordingly affirmed.

No. 8832 affirmed.

No. 8833 affirmed as to second count; reversed as to first count and remanded.

U.S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778.

[8] Putnam v. United States, supra; Zerega v. United States, 59 App.D.C. 67, 32 F.2d 963; Kelleher v. United States, 59 App.D.C. 107, 35 F.2d 877; Flowers v. United States, 8 Cir., 83 F.2d 78, 85, 8 Cir., 86 F.2d 79.