**McDONALD v. UNITED STATES.**
**WASHINGTON v. SAME.**

Nos. 9524, 9525.

United States Court of Appeals
District of Columbia.

Argued Oct. 8, 1947.

Decided Feb. 16, 1948.

Writ of Certiorari Granted April 19, 1948.

See 68 S.Ct. 905.

EDGERTON, Associate Justice, dissenting.

———◆———

Mr. Charles E. Ford, of Washington, D. C., with whom Mr. John Lewis Smith, Jr., of Washington, D. C., was on the brief, for appellants.

Mr. John P. Burke, Assistant United States Attorney, of Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, of Washington, D. C., was on the brief for appellee. Messrs. Sidney S. Sachs and John D. Lane, Assistant United States Attorneys, both of Washington, D. C., also entered appearances for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

Appellants were tried on four counts for promoting a lottery, possessing lottery tickets, and keeping a "place" and a "table" for betting on horse races. D.C.Code 1940, §§ 22—1501, 1502, 1504. Their motion before trial for the return of the seized property and suppression of evidence was denied. Having been found guilty on all counts, they appeal, contending the property should have been returned and the evidence suppressed because obtained in violation of their constitutional right to freedom from unreasonable search and seizure.

The police believed that appellant McDonald operated a numbers headquarters. They kept his home under observation for some time and saw "quite a bit of activity" there. He had previously been arrested for numbers operations. On being told that he had moved to the residence of a Mrs. Terry, where he occupied a back room on the second floor, the police set a watch on the house. Several times they saw him enter this house in the early afternoon, when numbers operators customarily go to their headquarters, and leave in the late afternoon, when they customarily leave.

On the afternoon of June 22, 1946, police officers Ogle, Blick and Clark watched the

Terry house. One of them heard a noise that sounded like an electric typewriter or an adding machine; he "could not say which it was." It was proved at the trial that there was an electric sewing machine in the house, which made a similar sound, and that adding machines are often used in numbers operations. The outer doors of the house were locked. Officer Ogle opened a window and entered Mrs. Terry's apartment on the first floor. She found him there and screamed. He brushed her aside, told her he was an officer, and unlocked the outer doors of the house to admit Blick and Clark. The three officers searched the rooms on the first floor, which were not locked. They then searched rooms on the second floor, starting at the front and working back. When they came upon a locked door at the back of the hall, Ogle mounted a chair and looked over the transom into what proved to be the room rented by appellant McDonald. There he saw both appellants, and also adding machines, numbers slips, and money. He called to McDonald to open the door. McDonald did so and the police entered his room, arrested him and Washington, and seized property which is described in the motion for return as adding machines, a suitcase containing papers, and $968 in money. The officers had no search warrant for the house or for McDonald's room, and no warrant of arrest for anyone.

■ In order to complain of an unlawful search and seizure, one must have an interest in the place searched or the property seized.[1] The appellants cannot complain that an unlawful entry was made into Mrs. Terry's first floor apartment in which they had no interest, nor were they concerned with the search of the rooms of the upper floor occupied by others, nor could Washington protest against an unlawful search of McDonald's room, had there been one. It does not appear that any search was made of the hall on the second floor, which after all was used in common by all the tenants and their guests. The closest approach to a search of McDonald's room was the act of the officer in looking through the transom at McDonald and Washington engaged

in an unlawful activity. Having observed the commission of a misdemeanor in his presence, the policeman and his fellow officers were justified in knocking at the door, demanding entrance, and arresting the defendants.

■ The only problem in the case is whether looking through the transom amounted to an unlawful search. It was not gentlemanly to spy on McDonald in that manner, but his constitutional rights were not thereby invaded. In United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202, the Supreme Court held that the use of a search light by a Coast Guard patrol boat by means of which contraband liquor on a motor boat was observed, did not amount to a search. That case was cited in Safarik v. United States, 8 Cir., 62 F.2d 892, 895, in which a flash light was used. Smith v. United States, 4 Cir., 2 F.2d 715, is another flash light case to the same effect. See also People v. Marvin, 358 Ill. 426, 193 N.E. 202; Koscielski v. State, 199 Ind. 546, 158 N.E. 902; Crowell v. State, 147 Tex.Cr.R. 299, 180 S.W.2d 343.

■ Many cases from both state and federal courts hold the word "search" connotes uncovering that which is hidden, prying into hidden places for that which is concealed. It is not a search to observe what is open to view. In Olmstead et al. v. United States, 277 U.S. 438, 465, 48 S.Ct. 564, 568, 72 L.Ed. 944, 66 A.L.R. 376, the wire tapping decision, the court remarked that the liberal construction given to the Fourth and Fifth Amendments "cannot justify enlargement of the language employed beyond the possible practical meaning of houses, persons, papers, and effects, or so to apply the words search and seizure *as to forbid hearing or sight.*" (Italics supplied.)

For the reasons given, both judgments are affirmed.

EDGERTON, Associate Justice (dissenting).

By guaranteeing freedom from "unreasonable searches and seizures," the

---

[1] Gibson v. United States, 80 U.S.App. D.C. 81, 149 F.2d 381, certiorari denied sub. nom. O'Kelley v. United States, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429.

Fourth Amendment "forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent * * *."[1]

The search of the house was unreasonable and therefore illegal. The house was a dwelling. Search of a dwelling without a warrant is never reasonable except when incidental to a lawful arrest.[2] Search of this house was not incidental to any arrest either lawful or unlawful. The officers had no right[3] to, and did not, break into the house in order to arrest McDonald. It does not even appear that they knew he was present. They broke and entered the house in order to make the illegal search they made. Instead of being incidental to the arrests the search led to the arrests.

The officers searched McDonald's room before they entered it. Though it is "not a search to observe what is open to view" it is a search to open things to view and then observe them. The room and its contents were opened to view by forcible invasion of the house and corridor, and then observed from the corridor. This search of McDonald's room was illegal, like the previous search of the other rooms and for the same reasons. If this had been otherwise what the officers saw might perhaps have justified them in entering the room, making the arrests, and seizing the property. But that is quite immaterial. Since the search was illegal it justified nothing. The arrests and seizures were as illegal as the search itself. "A search prosecuted in violation of the Constitution is not made lawful by what it brings to light,"[4] and evidence obtained by unlawful search is not made admissible by arresting its owner.[5] The government cannot "justify the arrest by the search and at the same time * * * justify the search by the arrest."[6]

It is true that in order to complain of an unlawful search and seizure one must have an interest in the place searched or the property seized. Appellant Washington had neither, for he was only a guest of appellant McDonald. But McDonald had both. He rented the room searched and he owned the property seized. He was of course entitled to use the corridor. In my opinion illegal search of the room by illegal invasion of the corridor was a plain violation of his constitutional right.[7]

The question is not whether officers may look in an unconventional way into another place, from a place in which they have a right to be and in which the person who complains has no interest.[8] The question is whether officers may look into a room from a place in which they have no right to be and in which the person who complains does have an interest; the corridor that is the only means of access to his room. A roomer's constitutional right of privacy is a fiction that keeps the word of promise to the ear and breaks it to the hope unless it includes a right not to be spied upon by trespassers who force their way into his corridor. Yet the government contends that search by such such trespassers is reasonable and the court decides that it is not a search. Neither of these propositions is comprehensible to me. No doubt a roomer's interest in a corridor is different from a householder's. Probably the one may be called an easement and the other an estate, as the government suggests. But I know of no reason why this difference should be critical here. To hold that McDonald cannot complain because he is only a roomer perverts the letter as well as the spirit of the constitutional guaranty against unreasonable searches and creates a discrimination in civil rights that is out of place in a democratic society.

[1] Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374.

[2] Agnello v. United States, 269 U.S. 20, 32–33, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409.

[3] Johnson v. United States, 68 S.Ct. 367.

[4] Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520.

[5] Go-Bart Importing Co. v. United States, supra note 1; Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L. Ed. 951.

[6] Johnson v. United States, supra [68 S.Ct. 370] note 3.

[7] Cf. Brown v. United States, 3 Cir., 83 F.2d 383; Waxman v. United States, 9 Cir., 12 F.2d 775, certiorari denied, 273 U.S. 716, 47 S.Ct. 108, 71 L.Ed. 855; Coon v. United States, 10 Cir., 36 F.2d 164.

[8] That was the question in the Lee case on which the court relies.