[Crim. No. 5769. In Bank. Feb. 24, 1956.]

THE PEOPLE, Appellant, v. PAUL EDSON GALE, Respondent.

254

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Appellant.

Giles B. Jackson and H. Clay Jacke for Respondent.

A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—By information defendant was charged with one count of possessing a narcotic in violation of Health and Safety Code, section 11500, a felony. His motion to set the information aside (see Pen. Code, § 995) was granted on the ground that all of the evidence against him was obtained by an illegal search and seizure in violation of his constitutional rights. The People appeal.

Defendant was arrested after he had stopped at approximately 12:15 a. m. on April 9, 1955, at the San Diego County sheriff's check station at the Mexican border. He was driving toward Mexico with a friend in a car registered in his mother's

name. He told the officers that the car belonged to him. One of the officers noticed that the front of the car appeared to have been in a recent accident and asked defendant to drive to the side of the road and stop in front of the sheriff's substation office. Defendant got out and told one of the officers that the car had been damaged in an accident about a month before in Los Angeles. This officer asked defendant and his friend to come into the office and told another officer to give the car a complete "shake-down." With the aid of his flashlight, the inspecting officer found under the right hand side of the front seat a spoon, a capsule of white substance, a needle, a medicine dropper, and a small scabbard. The white substance was later identified as a narcotic. The first officer examined defendant's arm and found old puncture marks, and defendant told him he had not used any heroin for a long time. A recent puncture mark was found on the friend's arm, and he told the officer that he had had a shot of heroin earlier in the day in Los Angeles. Both defendant and his friend told the officer that they did not know how the articles found under the front seat got into the car and that neither of them had ever seen them before. Defendant was searched and three papers taken from his wallet were introduced in evidence. On each of them there appeared to be a drawing of a map. The officer asked defendant what it was and he said he did not know. The officer then suggested to him that it was a map of the Tijuana area made for a narcotic contact, but defendant denied it. At the preliminary hearing the court sustained objections to defendant's questions designed to elicit from the officers their purpose in stopping and checking automobiles. There was testimony, however, that the officers were making a routine search of vehicles. "That is one of the purposes of the road block, sir, is to curb the juvenile problem and also check for, well, anything that we might find, anything that looked suspicious."

The attorney general contends that the search of the automobile in this case was reasonable whether or not it was incidental to a lawful arrest.

Since an automobile may readily be moved from place to place, its search without a warrant is not unreasonable if the officer has reasonable cause to believe it is carrying contraband. (*Carroll* v. *United States,* 267 U.S. 132, 153 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]; *Husty* v. *United States,* 282 U.S. 694, 700-701 [51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407]; *Scher* v. *United States,* 305 U.S. 251, 254-

255 [59 S.Ct. 174, 83 L.Ed. 151] ; *Brinegar* v. *United States,* 338 U.S. 160, 164 [69 S.Ct. 1302, 93 L.Ed. 1879].) The foregoing cases all recognized, however, that ordinarily in the absence of such reasonable cause, or the right to arrest an occupant of the automobile, its search is not permissible without a warrant. "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search." (*Carroll* v. *United States, supra,* 267 U.S. 132, 153-154; accord: *Wirin* v. *Horrall,* 85 Cal.App.2d 497, 501 [193 P.2d 470] ; *Pearson* v. *United States,* 150 F.2d 219, 221; *Smith* v. *State,* 182 Tenn. 158 [184 S.W.2d 390, 391] ; see also *United States* v. *Di Re,* 332 U.S. 581, 584-586 [68 S.Ct. 222, 92 L.Ed. 210].)

■ The attorney general seeks to avoid the effect of the foregoing rule in this case on the ground that the car was stopped and searched at the international border. He points out that the Carroll case recognized that travelers coming into the country may be stopped and searched to prevent illegal entry of persons or property and contends that persons leaving the country may also be stopped and searched to prevent illegal departures or exports. It does not appear, nor is it contended, however, that the deputy sheriffs were attempting to enforce any law, state or federal, dealing with the movement of persons or property into or out of the country or that they were attempting to apprehend any known fleeing criminals. They were conducting a routine search of vehicles "to curb the juvenile problem and also check for, well, anything that we might find, anything that looked suspicious." It is unnecessary to determine whether county officers may lawfully conduct routine searches of persons entering the country or whether such authority is limited to federal officers. In the present case, cars stopped and searched were leaving the country, and the possibility that such cars were being used to further criminal ventures was certainly of no greater concern to local officers than the possibility of similar use within the county. As the cases cited above establish, however, that possibility alone cannot justify stopping and searching all automobiles being lawfully used on the highways in the hope that some criminals will be found.

■ The attorney general contends that since the front of the car appeared to have been in a recent accident, the officers had reasonable cause to arrest defendant for hit-and-

run driving. (Veh. Code, § 480.) In view of the large number of traffic accidents and the fact that only a small percentage of these involve violations of Vehicle Code, section 480, however, the mere fact that the front end of the car was damaged would not constitute reasonable cause to believe defendant had violated that section. (See *Hughes* v. *Oreb,* 36 Cal.2d 854, 858 [228 P.2d 550].) Moreover, it does not appear, nor is it contended, that the car's lights were defective or that there was any reason to believe its equipment did not comply with the provisions of the Vehicle Code, or that the officers were conducting an investigation authorized by that code. (See Veh. Code, § 680.) ■ Even if it is assumed that the damaged condition of the car would justify the officers in stopping it and questioning the driver (see *People* v. *Marvin,* 358 Ill. 426 [193 N.E. 202, 203] ; *Smith* v. *State, supra,* 182 Tenn. 158 [184 S.W.2d 390, 391] ; *People* v. *Simon,* 45 Cal.2d 645, 649-651 [290 P.2d 531]), when that questioning elicited an explanation wholly consistent with innocence, no basis was established for arresting defendant and searching him and his car.

■ The attorney general contends that defendant has no standing to object to the seizure of the narcotic on the ground that he denied it was his. Defendant's rights were violated, however, when the car in his possession was subjected to an unreasonable search. (See *United States* v. *Jeffers,* 342 U.S. 48, 52-54 [72 S.Ct. 93, 96 L.Ed. 59] ; *Alvau* v. *United States,* 33 F.2d 467, 470; *Matthews* v. *Correa,* 135 F.2d 534, 537; *Scoggins* v. *United States,* 202 F.2d 211, 212; *United States* v. *Blok,* 188 F.2d 1019, 1021.) Since the narcotic was discovered as a result of that search, it was obtained in violation of defendant's constitutional rights and may not be used as evidence against him. (*Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426] ; *People* v. *Berger,* 44 Cal.2d 459, 462 [282 P.2d 509].) ■ Moreover, in *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855], we held that ''whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights.''

■ Similarly, there is no merit in the attorney general's contention that the search was lawful on the ground that the car was forfeited to the state. The record does not disclose that there was a judgment forfeiting the car to the

state, and even if it is assumed that a forfeiture would relate back to the time of the seizure, it would still be necessary for the state to base its right to forfeiture on the fruits of an unreasonable search. It is settled, however, that a search cannot be justified by what it turns up. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].)

The order is affirmed.

Gibson, C. J., Carter, J., Schauer, J., and McComb, J., concurred.

SPENCE, J.—I dissent.

Defendant was charged by information with the possession of a narcotic in violation of Health and Safety Code, section 11500, a felony. The majority opinion affirms an order setting aside the information upon the ground that all the incriminating evidence was obtained by an alleged "unreasonable" search in violation of defendant's constitutional rights. I cannot agree with the conclusion reached in the majority opinion, as I believe that the search was reasonable, and was not therefore in violation of the constitutional guarantees against "unreasonable searches and seizures." (U.S. Const., 4th Amend.; Cal. Const., art. I, § 19.)

The facts in the present case are essentially different from those in any other case which has been presented; and the conclusion that the search was reasonable may be rested solely upon its inherent reasonableness under the circumstances, and without regard to the question of whether such search was made as an incident of a lawful arrest.

The facts are adequately set forth in the majority opinion. The search was made shortly after midnight "at the San Diego County sheriff's check station at the Mexican border" in a "routine check" made as defendant was driving the automobile along the public highway toward Mexico. Under these circumstances, it is my opinion that any such "routine search" at the border by local or federal officers is entirely reasonable.

The privilege of entering or leaving this state and country at the international border is one that must necessarily be subject to reasonable regulation in the interest of the enforcement of domestic and international law; and one seeking that privilege should not be heard to object to any routine search of his person and automobile made by any duly authorized officer. It is a matter of common knowledge that

such searches by federal officers are customarily made in the enforcement of our customs and other regulations; and that such searches are customarily made by state and federal officers in the enforcement of regulations designed to prevent the spread of disease among persons, animals and crops, as well as in the enforcement of other regulations. It is further a matter of common knowledge that crime in general has assumed international proportions, and that the international traffic in contraband articles, and particularly narcotics, has become a serious menace to society, not only in this state and country but in all countries including those bordering on our own. It is therefore essential that routine searches at the borders be not only permitted but encouraged if we are to have any system of law enforcement that is worthy of the name. No authority has been called to our attention holding that such a routine search violates any constitutional guarantee; and it is indicated in *Carroll* v. *United States*, 267 U.S. 132, at page 154 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790], that searches at the international borders are distinguishable from other searches.

I am therefore of the opinion that no invasion of any constitutional right may be predicated merely upon a routine search by duly authorized officers at the international border of the person and automobile of one seeking the privilege of entering or leaving this state and country; and as it is undisputed that defendant was seeking that privilege, I conclude that the search was reasonable, and that the evidence obtained through that search was properly admitted at the preliminary hearing.

In view of this conclusion, it is unnecessary to determine here whether the search may be justified upon the further ground that it was an incident of a lawful arrest.

I would reverse the order dismissing the information.

Shenk, J., concurred.

Appellant's petition for a rehearing was denied March 21, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.