[Crim. No. 7348. Second Dist., Div. Three. May 24, 1961.]

THE PEOPLE, Respondent, v. GENE FLOYD CRISWELL et al., Appellants.

John H. Marshall, under appointment by the District Court of Appeal, and Julian I. Harmon for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury found defendants Criswell, Fronte, and La Point guilty of unlawfully possessing heroin (Health & Saf. Code, § 11500), and Criswell of unlawfully possessing marijuana (Health & Saf. Code, § 11530). They were sentenced to state prison. Fronte and La Point appeal from the judgments. Criswell appeals from the judgment and an order denying a new trial.

Criswell and La Point contend the narcotics were obtained as a result of a search incident to an unlawful arrest.

About February 4, 1960, Officer Mullens of the Los Angeles Police Department told Officer Jones he had received a call from a druggist who had stated that persons driving a 1958 Mercury with a Montana license had purchased some powdered milk sugar and capsules at his drugstore. Jones traced the registration of the car to one Bob Schongarth. Jones contacted Schongarth, who told him Fronte had been with him when he purchased the milk sugar and capsules and that Criswell and Fronte were dealing in narcotics. Schongarth pointed out a location on Hart Street as Fronte's residence. Jones saw Fronte there. On February 12, 1960, Jones arrested Fronte on a charge of being a narcotics addict. Jones testified he believed Fronte pleaded guilty to that charge. Fronte told the officer he had accompanied Schongarth when the latter purchased the milk sugar and capsules but said he remained in the car.

On March 21, 1960, Jones received a telephone call from an anonymous male who asked for "Narcotics," meaning the Narcotics Bureau of the Police Department. The caller said persons by the name of Criswell, Fronte, and La Point were at 16700 Citronia Street; they were driving a late model Ford Ranchero, 2-tone gray; they had some "stuff"; and they were going "to cut it up." In the narcotics traffic, "stuff" usually refers to heroin or a narcotic. "Cutting" is a term used by people dealing in narcotics meaning adding milk sugar or powdered milk or some such substance to the narcotic, usually heroin.

After the telephone call, Jones, with Officers Lestelle and Olsen, went to 16700 Citronia Street in plain clothes and in an undercover station wagon. They parked between 200 and 300 feet from that address. A Ford Ranchero was parked at 16700 Citronia in a driveway facing a garage in the front portion of the house. Criswell, Fronte, and La Point came out of the garage separately; Fronte came first, looked up and down the street, and got into the Ford; La Point came out next and got in the car; Criswell came next, looked up and down the street, closed the door of the garage, looked up and down the street again, and got in the car.

The officers then pulled in behind the Ford. As they did, Criswell turned and said something to Fronte. Criswell and Fronte then stooped over at the same time. The officers alighted and defendants got out of the Ford. Fronte had on a short-

sleeved shirt. Jones "noticed what appeared to me to be a fresh needle mark with a little blood on the inner portion of his arm." He shined a light in Fronte's eyes; they were contracted. Jones formed the opinion Fronte was under the influence of a narcotic. Officer Olsen looked into the glove compartment of the car and found a bag with a rubber prophylactic in it containing heroin and a vial of heroin tablets. Officer Lestelle searched the Ford and found a screw driver with a hollow handle under the front seat. In the hollow handle there was a bindle of loose heroin and one rubber prophylactic containing heroin. Defendants were then told they were under arrest.

Criswell then invited the officers into the house, saying he had just moved there and wanted to avoid creating a commotion outside. Before the officers went into the house Olsen saw some keys in Criswell's hand. As they reached the front door, Criswell said he had changed his mind; he did not have the key to get in; his wife had it and the house was locked. Olsen returned to the Ford and found the keys on the bed of the car near where Criswell had been standing. He picked up the keys, returned to the group, opened the door and entered the house. Olsen returned to the Ford, loosened the spare tire, and found an overnight bag stuffed under the seat. Stencilled on the bag was "LaPoint H&H 292218." The other officers and defendants went into the house. The house was searched. In a bedroom Criswell said was his, Jones found a hand-wrapped marijuana cigarette. In a pocket of a coat, Officer Lestelle found a paper bag containing three packs of zigzag papers used to roll cigarettes and some marijuana in a sandwich bag. Criswell told the officers these items were his.

The bag found by Officer Olsen contained a condom, a portion of a balloon, a can of milk sugar, several jars, a knife, a spatula, measuring spoons, and some rubber bands. Olsen testified: "Q. And did you have a specific conversation with Criswell? A. Yes, sir, I did. Q. Would you relate the conversation? A. When I showed him the bag I stated, 'It looks like we might have arrested you too soon. It looks like you were going to cut a lot of stuff. But I don't see it in the bag.' Q. Is that what you said to Criswell? A. Yes, sir, I accused him of that. He laughed and said, 'That could be', or words to that effect. I don't know whether he said, 'It might be' or 'could be', or 'I guess you are right.' It was an affirmative answer of some type. I then stated, 'Well, sometimes you are

lucky', at which time he just laughed. There were several other statements along the same line about the milk sugar and measuring spoons and the jar, regarding the cutting of heroin and the stashing of it in the jar.'' Officer Jones testified: ''I asked the defendants whose bag it was, and at this time the defendant La Point said it was his bag, but he hadn't seen it for a long time, that he had lost it; I can't remember the exact wording, but something to the effect that he had lost it out at the desert or out at the races, and he *he* hadn't seen it for quite some time, and he had no idea how it got under the front seat of the truck.''

Defendants were searched at the police station. Between Criswell's legs there was a condom containing heroin. When told he was to be searched, La Point said ''I've got the rest of the stuff on me,'' reached inside his pants, and pulled out four rubber sheaths containing heroin.

The officers did not have a warrant of any kind.

Defendants did not testify or offer any evidence in their own behalf other than cross-examination of the People's witnesses.

The contention that the officers had insufficient information on which to arrest is untenable. The officers had ample information on which to arrest. ▇▇ A peace officer may make an arrest without a warrant when he has reasonable cause for believing the person to be arrested has committed a felony. (Pen. Code, § 836; *People* v. *Smith*, 50 Cal.2d 149, 151 [323 P.2d 435].) ▇▇ An arrest without a warrant is not unreasonable if the officer has reasonable cause to believe a person is in possession of contraband. (*People* v. *Gale*, 46 Cal.2d 253, 255 [294 P.2d 13].) ▇▇ Reasonable cause is a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122]; *People* v. *McMurray*, 171 Cal.App.2d 178, 184 [340 P.2d 335].)

▇▇ Officer Jones had information that milk sugar and capsules, which he knew were used in cutting heroin, had been purchased from a druggist. He learned from Schongarth, to whom the car in which the purchasers had driven belonged, and that Criswell and Fronte were dealing in narcotics. About six weeks before the arrests in this case, Jones arrested Fronte as a narcotics addict. An anonymous caller told Jones defendants were at the Citronia Street address, described their car, and said they had some ''stuff'' which they were going to cut up. Jones knew Criswell had been arrested previously for selling narcotics. When defendants walked to the Ford they

made furtive movements, and after they got in it Criswell and La Point observed the officers' car and made further furtive movements as though they were concealing contraband. Defendants got out of the Ford voluntarily. When they did, Jones noticed a fresh needle mark on one of Fronte's arms, saw that his eyes did not respond to light, and concluded he was under the influence of narcotics. On these facts the officers were clearly justified in arresting all three defendants. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] ; *People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1] ; *People* v. *Hammond,* 54 Cal.2d 846, 853 [357 P.2d 289].) The information they had and the observations they made were enough to create a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in believing felonies had been committed. The officers had reasonable cause to believe each defendant was committing a public offense, and the arrests were reasonable.

Fronte contends the evidence is insufficient to establish he had knowledge of the presence of the narcotics. The point is so patently without merit as not to require discussion. The evidence was sufficient to support a finding that the heroin was in the joint possession of defendants. (*People* v. *Redrick,* 55 Cal.2d 282 [359 P.2d 255] ; *People* v. *Poe,* 164 Cal.App.2d 514 [330 P.2d 681].)

The judgments as to Fronte and La Point are affirmed ; the judgment and order denying a new trial as to Criswell are affirmed.

Shinn, P. J., and Ford, J., concurred.

The petition of appellant Criswell for a hearing by the Supreme Court was denied July 19, 1961.