## SHIELDS v. UNITED STATES.

Court of Appeals of District of Columbia.

Submitted May 9, 1928. Decided
June 4, 1928.

No. 4686.

1. **Bribery** ⬥6(1)—Indictment for bribing government employee to secure contents of reports of prohibition agents held sufficient (Pen. Code, § 39 [18 USCA § 91]).

Indictment for bribing government employee, in violation of Penal Code, § 39 (18 USCA § 91), setting forth with particularity official position occupied by person claimed to have been bribed, and alleging defendant offered to give and did give to her money to omit to do certain acts in violation of duty, with intent to induce her to disclose and make known to him contents of reports of prohibition agents, *held* sufficient, as showing violation of law in such way as to enable accused to know nature and cause of accusation and plead judgment in bar of further prosecution.

2. **Criminal law** ⬥395—Motion to suppress and return papers, documents, etc., held fatally defective for failure to assert interest in property seized.

Motion to suppress and return papers, documents, etc., on ground search and seizure were void, because affidavit in support thereof was insufficient, *held* fatally defective for failure to assert any interest in property seized.

3. **Searches and seizures** ⬥3(4)—Affidavit stating that affiant witnessed taking of letter containing documents secured from government files by one not entitled thereto furnished sufficient basis for search warrant (Pen. Code, § 39 [18 USCA § 91]).

Affidavit for search warrant, setting forth that affiant witnessed taking from post office a letter known to contain documents and papers bearing information relative to reports of prohibition agents, which had been secured from the files of the Prohibition Unit, and that such person was not entitled to receive it, *held* sufficient to authorize issuance of warrant, as setting out facts which would lead a reasonably prudent man to believe that offense had been committed, under Penal Code, § 39 (18 USCA § 91).

**4. Criminal law ⊕⊃37—Forwarding of letters containing government reports by special agent, after discovering illegal arrangement with government employee therefor, held not instigation of crime.**

Where illegal arrangement between defendant and government employee for forwording of letters containing information relative to reports of prohibition agents had been entered into prior to discovery of employee's violation of trust, the crime of offering a bribe therefor was complete, and forwarding of letters thereafter by special agent did not constitute a ruse, to make an affidavit for search warrant, but simply constituted means of procuring additional evidence of its commission rather than instigating a crime.

**5. Bribery ⊕⊃11—Proof that government employee claimed to have been bribed was acting in official function on earlier date than alleged in indictment held sufficient (Pen. Code, § 39 [18 USCA § 91]).**

In prosecution, under Penal Code, § 39 (18 USCA § 91), for bribing government employee, wherein indictment alleged that employee was acting in official function on certain date, proof that she was acting in such capacity on a different and earlier date within period of limitations was sufficient, in that actual payment of bribe need not be made while person who is subject of bribery was still acting in official function.

Appeal from Supreme Court of the District of Columbia.

Daniel J. Shields was convicted of offering and giving bribes to a government employee, and he appeals. Affirmed.

M. M. Doyle, J. H. Burnett and J. A. O'Shea, both of Washington, D. C., for appellant.

Peyton Gordon and .J. W. Fihelly, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appellant, Shields, was indicted under section 39 of the Penal Code (35 Stat. 1096), which provides: "Whoever shall promise, offer, or give, or cause or procure to be promised, offered, or given, any money or other thing of value, * , * * to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of money or value of the thing so offered, promised, given, made, or tendered, or caused, or procured to be so offered, promised, given, made, or tendered, and imprisoned not more than three years." 18 USCA § 91.

The indictment is in 16 counts, and charged Shields with offering and giving 16 different bribes on different dates to Della M. Hayes, an employee in the Prohibition Unit, Bureau of Internal Revenue, Treasury Department, in Washington, D. C. Shields was acquitted on the first 14 counts, and convicted on the last 2. He was sentenced to two years' imprisonment on each of the last 2 counts, the sentences to run concurrently. A fine of $300 was also imposed on the first of the 2 counts, and of $600 on the second.

The facts disclosed by the evidence for the government were substantially as follows:

Miss Hayes' term of employment dated from September, 1921, to April 15, 1924. During all this time she was assigned to the office of the Chief of Prohibition Agents, and was listed as a stenographer, but in addition to her stenographic duties she received all correspondence coming into the office of her chief, including reports of brewery investigations; read and classified all mail; received carbon copies of all outgoing correspondence; examined the incoming and outgoing mail; compiled and kept a statistical card report from the same. She also had access to the files of the Unit. Upon assuming her position, she was instructed by her superior officers as to the confidential nature of the files and records, and was directed not to give any files, records, or data to any one, unless specifically authorized to do so.

On January 24, 1922, Shields was introduced to Miss Hayes, at her place of employment, as president of the Cambria Car & Foundry Company, of Johnstown, Pa. It was then made known to her that Shields was interested in certain breweries in Pennsylvania and desired information with respect to investigations which were being made of two particular breweries. Miss Hayes informed Shields that she had one of the files in question on her desk and had access to the other, but that she could not give any specific information, and referred Shields to her superior officers. About an hour after Shields left the office, Miss Hayes received a telephone call from him, inviting her to dinner. On the following night she dined with him, and attended the theater as his guest. Fur-

ther dinner and theater appointments were made and kept on February 9 and February 16, 1922. On the latter occasion Shields informed Miss Hayes that she was in a position to help him, and that he was particularly interested in the Goenner Brewery Company, and that for any helpful brewery information he would pay her $1,000 a week. Two weeks later Shields again came to Washington, and, after receiving certain information relative to the Goenner Brewery Company, gave Miss Hayes $1,000. Two weeks later another $1,000 was paid under similar circumstances.

Soon after the second payment Shields informed Miss Hayes that the Goenner Brewery Company had been closed, but that he was interested in the Pennsylvania brewery situation in general; that for any information she could procure he "would see that she was taken care of." Thereafter she continuously furnished information to Shields on the 19 concerns mentioned in the indictment; on some occasions giving the information in person; on others, sending it by telephone and telegraph. All this information came from official documents and from correspondence and files in her office. In March, 1923, Shields made a third payment of $1,000 to Miss Hayes, and between April, 1923, and April 22, 1924, paid her $2,100, as set forth in the different counts of the indictment. In addition, he promised to buy her an automobile. Miss Hayes at the trial selected, from the papers containing confidential government information which had been taken from the office of Shields under a search warrant, some 60 government exhibits.

On February 15, 1924, government officials learned definitely of the betrayal of trust by Miss Hayes, whereupon she consented to work in conjunction with the government agents in the prosecution of Shields. Prior to this date Shields had requested her to send him copies of government reports in the cases of the American Cereal Beverage Company and the Elk County Brewing Company. After February 15, 1924, Miss Hayes gave Special Agents Lucas and Cox an original and duplicate copy of the report in the case of the American Cereal Beverage Company, together with a letter addressed to appellant, stating that she was sending the enclosed report, and would try to get the one on the Elk County Brewing Company the following week. After comparing the two reports, the original was placed with her letter in an envelope addressed to appellant at Johnstown, Pa. The letter was taken by Special Agent Lucas to Johnstown and placed in the post office box of Shields, from which it was taken by Shields' secretary into the building where Shields maintained an office.

On March 8, 1924, the same procedure was followed with respect to the report in the case of the Elk County Brewing Company, except in this instance Shields himself took the letter containing the report. On March 14th, following, in a telephonic conversation between Shields and Miss Hayes, he informed her that he had received both letters and the inclosed reports. On March 19, 1924, Shields telephoned Miss Hayes and told her "he was mailing her something upon receipt of which to drop him a note," to notify him of its receipt. The next morning Miss Hayes received a letter in appellant's handwriting, which was opened in the presence of the special agents and found to contain two 50 dollar bills.

On March 27, 1924, appellant was arrested, and on the same day his office at Johnstown, Pa., was searched and a large number of papers which Miss Hayes had sent to him were obtained. On the same day Shields telephoned Miss Hayes that he had been arrested and asked her to destroy all evidence. On April 3, following, Shields came to this city and asked Miss Hayes to say that she had never received anything from him. On April 22, 1924, he gave Miss Hayes ten $20 bills.

The evidence introduced in behalf of appellant was confined to an attempt to discredit the testimony of the witness Hayes.

In the first assignment of error, appellant challenges the sufficiency of the indictment and insists that the demurrer thereto should have been sustained. Each count of the indictment sets forth with great particularity the official position occupied by Miss Hayes, the duties of that position, and that Shields, knowing that Miss Hayes was a person acting for and on behalf of the United States in an official function, under and by authority of a department and office and bureau of the government of the United States, and that it was her duty not to disclose to any person not entitled to the same any information contained in reports and correspondence which she by virtue of the duties imposed on her might acquire from reports and correspondence, but to keep the same confidential and disclose it only to persons entitled to the same, did offer to give and gave to her specified sums of money to do and omit to do certain acts in violation of her duty; that is to say, with intent to induce her to disclose and make known to him the contents of reports of Prohibition Agents as to investigations of conditions and operations in nineteen different breweries.

[1] That this indictment clearly showed a

violation of law in such a way as to enable the accused to know the nature and cause of the accusation, and to plead the judgment in bar of further prosecution for the same offense, is too plain to admit of argument. Benson v. United States, 27 App. D. C. 331; United States v. Behrman, 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619; Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392. In Boykin v. United States (C. C. A.) 11 F.(2d) 484, relied on by appellant, the court observed that "nothing but conclusions are stated." Here, as already observed, the facts constituting the offense were fully and clearly stated.

[2] Prior to the trial of the case, a motion to suppress and return the papers, documents, etc., seized was made and overruled. It is here contended that the search and seizure were void, because the affidavit in support of the search warrant was insufficient. In the first place, the motion to suppress is fatally defective, in that appellant fails to assert any interest in the property seized. In his petition he sets forth that he "maintain an office at rooms Nos. 201 and 202 of the "Medea Building, located at the corner of Locust and Market streets, in the city of Johnstown, county of Cambria, state of Pennsylvania, and those offices were also occupied by the Cambria Car & Foundry Company, of which company your petitioner is the president"; that on March 21, 1924, a search warrant was issued authorizing a special agent of the Internal Revenue Service to enter in the daytime and search these premises; that on the 27th day of March, 1924, a special agent, with two others, "entered the said offices at rooms Nos. 201 and 202 Medea Building, * * * and demanded that the safe in said offices, which was the property of the said Cambria Car & Foundry Company be opened"; that, upon the refusal of the person in charge of the office to open the safe, the agent "by means of saws and other implements cut off the hinges on the safe of said Cambria Car & Foundry Company, and removed from said safe of said Cambria Car & Foundry Company a great number of papers," etc.—and prays that an order be entered requiring the officer or officers of the United States, "who may be in possession of said property, to forthwith return the same."

Nowhere in this petition is it alleged that any of the property seized is claimed to be the property of the petitioner, nor does he ask for its return to him. Clearly, to be entitled to its return, he must assert an interest in it. Such was the ruling in Haywood v. United States (C. C. A.) 268 F. 795 (cer-tiorari denied, 256 U. S. 689, 41 S. Ct. 449, 65 L. Ed. 1172); Chicco v. United States (C. C. A.) 284 F. 434; Graham v. United States (C. C. A.) 15 F.(2d) 740.

[3] But, in our view, the affidavit of Lucas furnished a sufficient basis for the issuance of the search warrant. He sets forth that on February 29, 1924, he witnessed the taking from the post office at Johnstown by the defendant a letter known to contain documents and papers bearing information in relation to the American Cereal Beverage Company, which information was secured from the files of the Prohibition Unit of the Bureau of Internal Revenue at Washington, D. C.; that Shields was not entitled to receive it; that Shields conveyed the letter to the entrance of the Medea Building, leading to the third floor, on which Shields maintained an office; and that on March 9, 1924, he witnessed the removal by Shields from the post office box at Johnstown of a letter known to contain documents or papers bearing information in relation to the Elk County Brewing Company, which information was secured from the files of the Prohibition Unit of the Bureau of Internal Revenue at Washington, D. C., and which information Shields was not entitled to receive; and that he believes that documents relating to these two brewing companies, as well as books, papers, and records relating thereto and to like concerns, are unlawfully held, contained, and concealed in the office maintained in rooms 201 and 202, in the Medea Building, etc., in furtherance of a conspiracy to defraud the United States and in violation of the national prohibition law.

The facts set out in this affidavit are such that a reasonably prudent man would be led to believe that an offense had been committed, and that there was probable cause for the issuance of a warrant. As observed by the court in Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds, at the time of his affidavit and the issuance of the warrant, for the belief that the law was being violated on the premises to be searched. * * *" See, also, Steele v. United States, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757; Maynard v. United States, 57 App. D. C. 314, 23 F.(2d) 141.

[4] The further suggestion is made in behalf of appellant that the forwarding of the letters to Shields by the special agent was "a ruse to make an affidavit for search war-

rant." The illegal arrangement between Shields and the employee, Hayes, for the forwarding of these two letters, had already been entered into prior to the discovery of her violation of trust. The crime of offering a bribe, therefore, was complete. The agent did not instigate a crime, but simply procured additional evidence of its commission.

[5] Finally, it is contended that appellant was charged in count 16 in the indictment with inducing Hayes, "a person acting for and on behalf of the United States in an official function," to do and omit to do certain acts, and that the date of the inducement charged, and proved, under this count, was April 22, 1924, whereas Hayes left the service April 15, 1924. This question was raised for the first time in the motion for a new trial. The court below, in disposing of it, observed: "It is to be noted that the statute in question may be violated by an unlawful offer, or promise, or payment made to one while acting in an official function; but it does not follow that the actual *payment*, which is but one of the several elements of the criminal offense, must be made while the person, who is the subject of the bribery, is still acting in an official function. Conceivably, the payment so unlawfully offered or promised may never be made at all, or the actual payment may be postponed or deferred until the person has ceased to act in an official function; nevertheless the law would be violated." We agree with the court below that, the dates alleged in the indictment having been set forth under a videlicet, proof that Miss Hayes was acting in an official function, etc., on a different and earlier date within the period of limitations was sufficient. Yeager v. United States, 16 App. D. C. 356; Miller v. United States, 57 App. D. C. 228, 19 F.(2d) 702.

We have carefully considered other assignments of error, and find them without merit. It results that the judgment must be affirmed.

Affirmed.