**ALVAU et al. v. UNITED STATES.**

Circuit Court of Appeals, Ninth Circuit.
June 24, 1929.

Rehearing Denied July 15, 1929.

No. 5746.

468

Edward H. Chavelle, of Seattle, Wash., for appellants.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. Suspecting that intoxicating liquor was being manufactured by the appellant Alvau, three prohibition agents, without a search warrant, went to his residence, in the country some distance from Tacoma, about 3 o'clock at night. Four hundred or five hundred yards from the house they detected the odor of fermenting mash, which grew stronger as they approached, and when they came near the house they also smelled hot or burning kerosene. In the darkness they investigated the outside premises—barn and yard—but found nothing of a suspicious character other than what they call a sump or surface cesspool, apparently a shallow excavation filled with gravel, which at the time was warm, and from which arose the odor of fermenting or fermented mash. The house was undoubtedly the appellant's residence, occupied at the very time by himself and his family, consisting of his wife and two children, and in it also was the appellant Rossi, the purpose of whose presence, whether criminal or legitimate, became one of the issues of fact at the trial. No lights were visible, but upon investigation the agents learned that there were three outside doors, one in front, one at the back, and one leading to the basement, all being locked.

Getting no response to their demands for admission, accompanied by the announcement that they were prohibition agents, one of them broke open the basement door and, entering, unlocked the other doors to let in his associates. Appellant was taken into custody and a prolonged search was made of the interior of the house, including the basement, without discovering any incriminating evidence. They then communicated with their superior in Tacoma, who, in response to their suggestion, came out later in the morning, and after some further search they discovered in one of the walls of the basement a heavy door or block about two feet in diameter, finished and fitted in, in such manner as closely to resemble the wall itself. Opening this, they were able to get through into two underground rooms, having no outside entrance, where they found appellant Rossi, a complete still which manifestly had been recently in operation, vats containing a large quantity of liquid sugar mash and about 40 gallons of whisky.

Acting upon the information thus obtained, a grand jury later returned an indictment charging the two appellants, in three counts, with violations of sections 3266, 3281, and 3282 of the Revised Statutes of the United States (26 USCA §§ 291, 306, 307), which define offenses, of the grade of felonies, relating particularly to the manufacture of distilled spirits and the operation of distilleries. Seasonably appellant Alvau made an application, supported by affidavits, for the suppression of the evidence thus obtained, upon the ground that the search was in violation of his constitutional rights. This the court declined to rule upon preliminarily, but put defendants to trial, with the understanding that he would pass upon the question after he had heard all the evidence. Objections by both defendants to the reception of the evidence and motions to strike it out were overruled, and ultimately the court held it admissible. There was a verdict of guilty, with judgment accordingly, and from this judgment both defendants appeal.

The principal question presented is of the legality of the search, for, if illegal, and for that reason the evidence so obtained be stricken, admittedly there would remain no substantial support for the verdict. It will

at once be noted that the case bears a close resemblance to Cola v. United States (C. C. A.) 22 F.(2d) 742. In point of fact the only substantial difference is that there the invasion was made in the daytime, during the absence of the occupants of the house, and here it was in the darkness of the night, while appellant and his wife and children were at home. In point of law, the only distinction urged by the government is that there the prosecution was predicated on the National Prohibition Act, while here the charges are of infractions of the general revenue laws. The reasoning is that the prohibition agents, being invested with the powers of internal revenue agents (Maryland v. Soper, 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449), were authorized by the general revenue laws, and particularly section 3276, R. S. U. S. (26 USCA § 299), to make the entry and search without a warrant.

This section provides that it shall be lawful for revenue officers, as well by night as by day, "to enter into any distillery or building or place used for the business of distilling, or used in connection therewith for storage or other purposes, and to examine, gauge, measure, and take an account of every still or other vessel or utensil of any kind," and indeed to measure and take account of all material and appliances to be found therein. And it is further provided that, "whenever any officer, having demanded admittance into a distillery or distillery premises, and having declared his name and office, is not admitted," it shall be lawful for him, as well by night as by day, to make a forcible entry.

Read literally, the section might be taken as a blanket warrant to the officers at any time to search premises of every kind; but, so read, it would clearly fall under the ban of the Fourth Amendment to the Constitution. In its application to facts having any close·resemblance to those here presented, it does not seem to have had frequent consideration by the courts. There has been called to our attention no decision, other than those of the learned judge below, where the broad grant of authority contended for has been recognized. Cases where bank inspectors, meat inspectors, oleomargarine inspectors, and other agents exercising similar functions, rightfully enter such places of business in the regular performance of their duties, and without objection on the part of the proprietors, and while so employed search for and obtain evidence of wrongdoing, present no real analogy. So also it may be said that those who professedly or openly engage in the distillery business, by compliance with the statutes, undoubtedly give their consent that the revenue agents may enter the premises devoted to such purposes, at any time, to make inspections and otherwise to discharge the duties imposed upon them by law. Indeed, in such case the agents are expressly granted a measure of control over the premises. As was said in United States v. Three Tons of Coal, 28 Fed. Cas. 149, 157, No. 16515: "Applications must be made, notices and bonds must be given. The location of the establishments, with all mechanical arrangements for operating them, are prescribed, the days and hours of business, and the quantity of grain for every gallon of production are fixed, and government officers, consisting of gaugers and storekeepers, hold the keys and control the locks and seals of the furnaces, rooms, wine cisterns and storehouses, appertaining to the establishments, and employed in the business." See, also, United States v. Singer, 82 U. S. (15 Wall.) 111, 21 L. Ed. 49.

In construing a similar, but less drastic, provision of the statutes (section 3177, R. S. U. S. [26 USCA § 92]), Judge Peck, in United States v. Hilsinger (D. C.) 284 F. 585, 590, said: "This is not thought to warrant a search or seizure elsewhere than in a place like a brewery or distillery, where such articles are avowedly made or kept; that is to say, it is thought that when one avowedly goes into the business of producing such articles, registers his manufactory with the collector of internal revenue, then it becomes subject and he subjects it to the provisions and terms of this statute. This statute is not thought to extend to all places where illegal manufacture is carried on. That would amount to a blanket warrant to search for excisable articles, void under the Constitution. To give this act a constitutional construction it seems to me that it must be restricted to breweries, distilleries, and like places where the manufacture of excisable articles is avowedly carried on."

And in United States v. Swan (D. C.) 15 F.(2d) 598, Judge Kerrigan, in construing section 3276, after quoting with approval from the Hilsinger Case, said: "The distinction between this case and that of a registered distillery is broad and obvious. One who registers a still in effect consents to its being searched by proper officers at any time. One who does not gives no such consent, and for this reason the statute has no application to him."

While we are not to be understood as

470

necessarily holding that the application of the statute is restricted to a registered still, and does not extend to a place avowedly or notoriously devoted to the distillery business, we are of the opinion that it does not authorize the forcible entry of a building, admittedly a private residence, where the circumstances within the knowledge of the officers tending to engender the belief that a still is being unlawfully operated therein are barely sufficient, in the most favorable view, to authorize a magistrate, upon being appropriately advised thereof, to issue a search warrant. If the construction placed upon the statute by the government is correct, it is difficult to conceive of a case where a search warrant would be at all necessary. And yet section 3462 of the Revised Statutes (26 USCA § 1195) expressly provides that United States judges and United States commissioners "may, within their respective jurisdictions, issue a search warrant, authorizing any internal revenue officer to search any premises within" their jurisdiction, "if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises." And it is generally held that an affidavit merely following the language of this section is insufficient to justify the issuance of a search warrant, but that the showing must be of probative facts as required by the Constitution. See Ripper v. United States (C. C. A.) 178 F. 24.

There was here no emergency; it is not a case of a rapidly moving automobile or other instrumentality employed in violation of the law, or of an outcry from a closed building of murder, or robbery, where immediate action is often necessary. If the information obtained by the government through the sense of smell was sufficient to authorize the issuance of a search warrant, there was no reason why the officers should not have made application therefor, and thus have proceeded in an orderly manner. To require such procedure is not to condone the flagrantly criminal conduct of which the defendants were guilty. Forcibly and in the nighttime to enter an occupied residence, even though it is thought to be used in part for unlawful purposes, is likely to be attended with disorder, and to result in violence and tragic consequences. We feel constrained to hold that the search was unreasonable and in violation of constitutional rights, and that therefore the evidence was inadmissible.

Incidentally, it is said for the government that no error was committed, because in the application for suppression there was no express averment of ownership by the appellants of the still and liquor. But, as already stated, the court did not pass upon the sufficiency of the application, and advised the parties that he would rule upon the facts as they were ultimately disclosed by the evidence, and undoubtedly the evidence established possession in defendants and ownership by Alvau. Besides, ownership of the building was directly alleged, and in essence the invasion of appellants' constitutional rights consisted of the forcible entry and the unwarranted search thereof. Hence the case does not fall within the rule of such cases as Shields v. United States (App. D. C.) 26 F.(2d) 993, and Haywood v. United States (C. C. A.) 268 F. 795.

It is also suggested that Rossi cannot claim benefit, for the reason that he did not join in the petition for suppression, did not own the building, and claimed no interest in the still. But when the testimony was all in, as required by the court, he did join in the motion to strike out and withdraw from the jury the evidence secured through the search, and for the time being, as the guest or employee of its owner, he was domiciled in the residence.

Reversed.