## CRADLE v. UNITED STATES.
### Nos. 9899, 9900.

United States Court of Appeals
District of Columbia Circuit

Decided Sept. 26, 1949.

Mr. Ben Paul Noble, Washington, D. C., for appellant.

Mrs. Grace B. Stiles, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and John D. Lane, Assistant United States Attorney, Washington, D. C., were on the brief, for appellee.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Lorenzo McCoy Cradle and Agnes E. Biggs were jointly indicted by a grand jury in the District of Columbia for grand larceny, and for housebreaking and grand larceny. Agnes E. Biggs entered a plea of guilty to one of the charges and not guilty to the other. She was convicted and has not appealed. Cradle pleaded not guilty to the two indictments and was convicted on both charges. He appeals.

The record contains the story of an unusually bold housebreaking and larceny. Pat J. Fiordelise, the victim, was moving his residence from 1659 Hobart Street NW. to 1850 Wyoming Avenue NW. on February 16, 1948. When the day was over, the process of moving had not been completed but had progressed far enough to permit Fiordelise and his family to spend that night at the Wyoming Avenue house. About 5:00 p. m. on February 16, he and his wife left their new home and spent the evening at the wrestling matches, leaving their two small children at home with Agnes E. Biggs. Fiordelise returned about 11:30 p. m. to find his Wyoming Avenue house in disorder and to discover that he had been thoroughly robbed.

Lorenzo Cradle and the Biggs woman had been employed as domestic servants by Fiordelise for some four or five months prior to that time. Cradle, when first employed, had given his name as Lorenzo Biggs. During the evening while the Fiordelises were away, Lorenzo hired a truck and driver and, accompanied by Agnes E. Biggs, proceeded to load into the truck a considerable quantity of furniture,

wearing apparel and other articles from both the Hobart Street house and the Wyoming Avenue house.

Police officers, who had been looking for Cradle, found him on March 6, 1948, at his mother's home, an apartment on Corcoran Street. They had no warrant of any kind, but had a photograph of Lorenzo Cradle, alias Biggs, and knew he was wanted for breaking into and robbing the Fiordelise houses. The officers surrounded the house at about 3:00 a. m. and, when they knocked on the door, Cradle answered and readily admitted his identity. He was then arrested as he came out of the door, and just as readily confessed to having possession of stolen property and in effect confessed to its larceny. A large combination radio in plain view in the living room was pointed out by Cradle as one taken from Fiordelise. The other articles which one of the arresting officers testified were recovered at the apartment were not searched out by the officers, but were gathered up by Cradle and were brought into the living room by him and exhibited to the police as things he had stolen.

Three days later, both Cradle and Biggs confessed to Fiordelise in the presence of several police officers and gave full particulars of the thefts.

Some weeks before his trial, Cradle filed a motion, under Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress for use as evidence the various articles which he had exhibited to the police, on the ground that the search of his mother's apartment was illegal and that consequently the seizure of the stolen goods was unlawful. The motion did not describe the articles sought to be suppressed except to refer to them as having been "seized from him and from the residence of his mother". A hearing was had on May 7, 1948, at which evidence was introduced by the appellant. Cradle testified that on March 6, 1948, he was living in his mother's apartment. Nevertheless, the District Court held he could not complain of the alleged search of another's apartment, and that his rights were not invaded by the seizure of goods which he admitted were stolen property and therefore not his own, so the motion to suppress was denied.

On June 7, 1948, a full month after the motion to suppress had been heard and determined, the trial began in the District Court. The confessions were detailed to the jury by Fiordelise and others. Keith G. Gosman, one of the arresting officers, testified that on the night of the arrest he and his fellow officers recovered at the Corcoran Street apartment a large combination two-tone radio, a table lamp, a woman's blue suit, a woman's black raincoat, a suitcase of assorted men's and women's clothing, and an electric hot plate. He said Cradle told him at the time that those articles were among the goods he had taken from the two Fiordelise houses. The truck driver testified that he carted away from the two houses the articles which Cradle brought out, and that Cradle had employed him for that purpose.

No objection was made by the appellant to the introduction of any of the evidence just summarized, nor was any of it denied. Cradle's counsel did object, however, when the government offered in evidence five articles of personal property, basing his objection on the theory that the articles offered were obtained by an illegal search and seizure at his mother's apartment. But he offered no evidence to show that any one of the five items was seized at the apartment when he was arrested. The objection was overruled.

Appellant's several assignments of error really amount to two: (a) that the court erred in denying his motion to suppress for use as evidence the articles seized in his mother's apartment on the ground that those articles were obtained through illegal search and seizure; (b) that the court erred in allowing the introduction of evidence obtained by an illegal seizure following an unlawful search.

In our view, there was no search made by the officers at the mother's apartment. The combination radio was in plain view in the living room, and the other items were assembled there by Cradle who frankly acknowledged he had stolen them from his employer. If it be suggested that he

acted under the compulsion of the presence of the police and of the fact that he was under arrest, and that therefore the officers technically and constructively made a search, the answer is they had a right to do so. Since they had reasonable grounds for believing Cradle was guilty of a felony, the arrest was lawful. That being true, it was not unlawful [1] to search the apartment, if indeed there was a search.

The Supreme Court said in Harris v. United States, 1947, 331 U.S. 145, 150–151, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399:

"The Fourth Amendment has never been held to require that every valid search and seizure be effected under the authority of a search warrant. Search and seizure incident to lawful arrest is a practice of ancient origin and has long been an integral part of the law-enforcement procedures of the United States and of the individual states.

"The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control."

If, as we think, no search was made, Cradle cannot complain that the seizure was unlawful since he admitted that the articles seized belonged to Fiordelise and not to him. And if it be conceded that technically a search was made, it was not unlawfully done because it was incident to a lawful arrest, under the holding of the Harris case.

■ Be that as it may, let us now assume, arguendo, that the articles were unlawfully seized at the apartment following an unlawful arrest and search, and that the trial court erred in denying the motion to suppress them for use as evidence. With that assumption, the motion to suppress should have been granted, and under Rule 41(e) the property seized should "not be admissible in evidence at any hearing or trial." Even so, the error in refusing to suppress, for use as evidence, the property recovered at the apartment did not prejudice the appellant, because no article recovered there was introduced in evidence against him, as we shall show.

As has been stated, there were just five pieces of property offered by the prosecution and received in evidence,—a portable

1. "* * * The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony * * *. Kurtz v. Moffitt, 115 U.S. 487 [6 S.Ct. 148, 29 L.Ed. 458] [1885]." Carroll v. United States, 1925, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543, 39 A.L.R. 790.

In Shettel v. United States, 1940, 72 App.D.C. 250, 113 F.2d 34, we referred to this rule as "axiomatic." The Supreme Court also said in Carroll v. United States, 267 U.S. at page 158, 45 S.Ct. at page 287:

"* * * When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."

In Shew v. United States, 1946, 155 F.2d 628, 629–630, certiorari denied 328 U.S. 870, 66 S.Ct. 1381, 90 L.Ed. 1640, the Court of Appeals for the Fourth Circuit, consisting of Judges Soper and Dobie and Chief Justice Groner of this court, said:

"The principal question in this case relates to the admissibility of certain evidence which the appellant claims was secured through an unlawful search and seizure in violation of the Fourth Amendment * * *

* * * * * *

"Under the circumstances described, the fruits of the search were admissible in evidence if the arrest of the defendant was lawful, even though the smokehouse be regarded as part of the defendant's dwelling house * * * [For] a search of a dwelling may be made without a warrant as an incident to a lawful arrest. In this case there can be no doubt that the arrest was lawful, for an arrest for felony without warrant may be made by officers of the law if they have reasonable ground to believe that a felony has been committed and reasonable ground to believe that the person to be arrested has committed it." Compare also United States v. Lindenfeld, 2 Cir., 1944, 142 F.2d 829, certiorari denied, Lindenfeld v. U. S., 323 U.S. 761, 65 S.Ct. 89, 89 L.Ed. 609.

radio, a sofa pillow, two skirts and one black and white print dress. No witness said that any one of those articles was seized at Cradle's apartment. No witness said any one of them was found in his possession or that any of them ever had been in his possession. None of the five articles received in evidence was included in the arresting officer's enumeration of goods found at the apartment. Proof for the government merely identified the five exhibits as the property of the Fiordelises.

Officer Berry testified, without objection from the appellant, that a radio "was recovered from a second-hand store where the defendant's sister had pawned or sold it." Manifestly the portable radio used as evidence was not the "large combination two-tone radio" which the officers recovered at the apartment, but was that which was found at the pawnshop. No witness identified the sofa pillow received in evidence as having been found at the apartment, nor was there any testimony tending to show that the two skirts and the black and white print dress which were introduced were among the goods recovered there.

To be sure, Officer Gosman testified that Cradle turned over to him after the arrest a suitcase containing assorted men's and women's clothing, and it is of course possible that the two skirts and the print dress introduced at the trial were in that suitcase, and so were among the articles seized at the apartment. But there is no proof whatever that the print dress or either skirt was in fact in the suitcase, and it is only a surmise to say that any one of those articles was seized at the time of the arrest. It follows, therefore, that even if the seizure of certain goods at the apartment was illegal and if, for that reason, the motion to suppress was erroneously denied, nevertheless the appellant was not thereby prejudiced because it is not shown that any of the articles said to have been illegally seized was used in evidence against him.

The appellant's second assigned error—that the court erred in allowing the introduction of evidence obtained by an illegal seizure following an unlawful search—need not detain us long.

We have seen that one of the arresting officers testified to having recovered at the apartment certain items of property stolen from Fiordelise, which he enumerated. If we again assume, arguendo, that those articles were obtained by an illegal search and seizure, the officer's testimony concerning their recovery may have been inadmissible, even though they were not physically introduced in evidence. Whether admissible or inadmissible we need not decide, for the appellant did not object to the arresting officer's testimony in which he told of finding certain stolen goods at the apartment. Indeed, part of his testimony on that subject was elicited on cross-examination by appellant's counsel. Having failed to make timely objection, the appellant cannot complain for the first time on appeal that the evidence was erroneously received.

At the conclusion of the government's case, appellant's counsel said, "We rest on the motion, Your Honor", referring doubtless to his motion to suppress which had been heard and denied a month before the trial began. Counsel may have supposed that the motion projected itself into the trial and served in lieu of objections to oral evidence concerning the discovery of the articles. We do not think the motion had that effect. It was incumbent upon the appellant to object to Gosman's evidence at the time it was offered, if he desired to rely for reversal on its reception.

Affirmed.

STEPHENS, Chief Judge, dissenting: I am unable to agree with the disposition of these cases made by the majority.

The appellant, Lorenzo McCoy Cradle, hereafter referred to as Cradle, and one Agnes E. Biggs, hereafter referred to as Agnes Biggs, were jointly charged under one indictment in the District Court of the United States for the District of Columbia with the crimes of housebreaking and larceny, and jointly under another indictment with the crime of grand larceny. Cradle pleaded not guilty to all three charges; Agnes Biggs pleaded not guilty to the charge of housebreaking, guilty

to the charges of larceny and grand larceny. The two cases were consolidated for trial. Before trial Cradle and Agnes Biggs jointly moved, pursuant to Rule 41 (e), Federal Rules of Criminal Procedure, to suppress for use as evidence personal property which they alleged had been seized from them illegally.[1] The motion to suppress was supported by an affidavit executed by Cradle. After a hearing on the motion at which testimony was given by Cradle, the motion was denied. Cradle and Agnes Biggs were then tried before a court and jury and were found guilty. Cradle was sentenced to imprisonment in the Washington Asylum and Jail for a term of one to three years under each of the two indictments, the sentences to run concurrently. The record does not show what sentences were imposed upon Agnes Biggs. Cradle alone appeals from the convictions. As I read the record there was included within the evidence introduced at the trial a part of the property which was the subject of the motion to suppress. If the property was seized in violation of Cradle's rights under the Fourth Amendment to the Constitution, his convictions based upon evidence so obtained cannot be sustained. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925); Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186 (1927); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191 (1948).

According to the record, as I read it, the facts relevant to the motion to suppress are as follows: On February 16, 1948, P. J. Fiordelise was the lessee of two houses in the District of Columbia, one on Hobart Street, N. W., and the other on Wyoming Avenue, N. W. Fiordelise and his wife and two children first resided in the Hobart Street house, but prior to February 16 they moved to the Wyoming Avenue house and were there living on that date. A portion of their furniture remained at the Hobart Street house. The remainder was in the Wyoming Avenue residence. Cradle, under the name of Lorenzo Biggs, and Agnes Biggs were on February 16 working for and residing with the Fiordelises. Cradle had a key to the Wyoming Avenue house, Agnes Biggs a key to each house. At about 5:00 P.M. on the date mentioned Fiordelise and his wife left the Wyoming Avenue house for the evening, leaving the two children there in the care of Agnes Biggs—Cradle having himself left a few minutes before the Fiordelises. The Fiordelises returned shortly after 11:00 P.M. They discovered the front door of the Wyoming Avenue house open, the children alone, certain pieces of furniture and all of their clothing missing, and Cradle and Agnes Biggs absent. On the following morning Fiordelise discovered that furniture was missing also from the Hobart Street house. Until their arrest by the police on March 6—nearly three weeks later—as described below, Fiordelise neither saw nor talked with either Agnes Biggs or Cradle. He did, however, at a time not made certain in the record, notify the police of the loss of his

---

1. Rule 41 (e), Federal Rules of Criminal Procedure, provides: "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally

executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

property. So far as the record shows, the police took no action in the case until shortly before the arrest. At about 3:30 in the morning of March 6, Keith G. Gosman, a sergeant attached to the Detective Bureau of the Metropolitan Police Department, was furnished by another officer with a picture on which were the names "Lorenzo Biggs" and "Lorenzo Cradle," and with a description of the place where Cradle was supposed to live, to wit, 1815 Corcoran Street, in the District. This was an apartment occupied by Cradle's mother. Gosman, accompanied by several other officers, proceeded in a scout car to the place described. The scout car covered the rear door and Gosman and some of the officers went to that door. Other officers went to the front door. Gosman had no warrant for arrest and no search warrant. Calling out that the police were outside, Gosman knocked on the rear door. Cradle opened the door and stepped outside, whereupon Gosman seized him and told him that he was under arrest and asked where the goods were that he "had taken." Cradle replied that they were in the front room of the apartment. Gosman then entered and with the aid of Cradle located the goods. They consisted of a radio, an electric hot plate, a woman's suit, a suitcase full of clothing, a woman's black raincoat, and a table lamp. Agnes Biggs was present. She and Cradle were taken to the police station by Gosman. Other officers returned and took possession of the goods located, with Cradle's aid, by Gosman and in addition recovered from the apartment other articles of property stolen from the Fiordelises. It was all of this stolen property recovered from the apartment of Cradle's mother which was the subject of the motion to suppress—although as indicated above only a part of it was introduced in evidence.

The Fourth Amendment to the Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Two questions are presented by the appeal: I. Whether the search and seizure was unreasonable. II. If the answer to the first question is in the affirmative, whether the appellant had sufficient interest in the premises searched to bring him within the protection of the Amendment. In answering these two questions I shall assume, arguendo, that the arrest of Cradle without a warrant was lawful.

I

In McDonald v. United States, supra, the Supreme Court, citing Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), held that there must be compelling reasons—such as an emergency —to justify police officers in searching private premises without a search warrant. The Court said that the protection of the Fourth Amendment against unreasonable searches and seizures extends to the innocent and guilty alike and "marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation. And the law provides as a sanction against the flouting of this constitutional safeguard the suppression of evidence secured as a result of the violation, when it is tendered in a federal court. . . ." (335 U.S. at page 453, 69 S.Ct. at page 192) The Court pointed out that in enforcing the guarantee of the Fourth Amendment it was not dealing with formalities. In this respect it said:

. . . The presence of a search warrant serves a high function. *Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police.* This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy

968

of the home. *We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.* [Italics supplied] [335 U.S. at pagees 445–456, 69 S.Ct. at page 193]

In the McDonald case, police officers who had had McDonald under surveillance for some months on suspicion of conducting a numbers game, surrounded a rooming house which they had observed him from time to time entering during hours in which operations at the headquarters of numbers games are customarily carried on. The officers had no warrant for McDonald's arrest and no search warrant. One of them, however, thought that he heard an adding machine, and since such machines are frequently used in the conduct of numbers games the officers sought admission to the house. One of the officers opened a window leading to the landlady's room and climbed through, identified himself to the landlady, and admitted the other officers. After searching the rooms on the ground floor, the officers proceeded to the second floor and one of them, standing on a chair and looking through the transom of an end bedroom the door of which was closed, observed McDonald and another, as well as numbers slips, money piled on a table, and adding machines. The officers called to McDonald to open the door. He did so and the officers arrested him and seized the adding machines, a suitcase of papers, and money. A motion was made to suppress the use of this property as evidence. The Government sought to justify the search and seizure without a warrant upon the ground that the arrest was lawful since the officers had observed McDonald in the act of committing an offense. It was asserted that, the arrest being lawful, the search incident thereto was also lawful. The Supreme Court, assuming, without deciding, that the arrest was lawful, nevertheless held that the search and seizure was unlawful—for lack of a search warrant. It was urged by the Government that the police had had no probable cause for obtaining a search warrant until they heard the sound of the adding machines; and there was some vague and general testimony in the case that on previous occasions the officers had sought search warrants but had been denied them. But the Court held that the proper foundation for dispensing with a search warrant did not exist. Discussing the facts, the Court said:

Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances, as we held in Johnson v. United States, supra. We will not assume that where a defendant has been under surveillance for months, no search warrant could have been obtained. What showing these officers made when they applied on the earlier occasions, the dates of these applications, and all the circumstances bearing upon the necessity to make this search without a warrant are absent from this record. We cannot allow the constitutional barrier that protects the privacy of the individual to be hurdled so easily. Moreover, when we move to the scene of the crime, the reason for the absence of a search warrant is even less obvious. When the officers heard the adding machine and, at the latest, when they saw what was transpiring in the room, they certainly had adequate grounds for seeking a search warrant.

Here, as in Johnson v. United States and Trupiano v. United States, the defendant was not fleeing or seeking to escape. Officers were there to apprehend petitioners in case they tried to leave. Nor was the property in the process of destruction nor as likely to be destroyed as the opium paraphernalia in the Johnson case. Petitioners were busily engaged in their lottery venture. No reason, except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant. But those reasons are no justification for by-passing the constitutional requirement, as we held in Johnson v. United States, supra, p. 15 [68 S.Ct. page 369]. [335 U.S. at pages 454–455, 69 S.Ct. at page 193]

The facts in the instant case substantially parallel those in the McDonald case. The theft had been reported to the police, they had a picture of Cradle, and were advised as to his probable whereabouts. In Cradle's and Agnes Biggs' having on the evening of the theft of the property left the premises of the Fiordelises where they had been living and working, and in their possession of keys to the two houses, there was reason to suspect that they were the thieves and that the property, or some of it, would likely be where they could be found. At the time of the search and seizure, Cradle was not fleeing or seeking to escape; and officers, several in number, were present in case he tried to escape. The prop-

erty seized was not in the process of destruction or likely to be destroyed. In the instant case, as in the McDonald Case, no reason for the absence of a search warrant appears except inconvenience to the officers and delay on their part in preparing the necessary papers for the obtaining of a warrant and in presenting them to a magistrate.

As I understand the majority view it is, first, that there was no search made by the officers of Cradle's mother's apartment— because some of the property recovered was in plain view of officer Gosman and the remainder was located with the aid of Cradle; second, that even if there was a search it was lawful since made incident to a lawful arrest; third, that even if the search was unlawful Cradle was not prejudiced because the record does not show that any article of property recovered from the apartment of Cradle's mother was actually introduced in evidence against Cradle at the trial.

As to the first point: It is true that a part of the property seized was within the view of the officers. But in the McDonald case discussed above all of the articles seized were in plain sight of the officers. This was pointed out in the dissenting opinion in that case, yet the majority held that there was a search. It is to be noted, moreover, that in the McDonald case, all of the articles being in plain sight, there was no necessity for inquiry concerning them. In the instant case the searching officer, Gosman, inquired of Cradle whether or not the combination radio standing in the front room of Cradle's mother's apartment was stolen from the Fiordelises.[2] If there was a search in the McDonald case where no inquiry was necessary to identify or locate the property seized, *a fortiori* there was a search in the instant case where inquiry was necessary. It is true that in the instant case Cradle aided the officer in assembling the property. But this was under circumstances of implied coercion. It was not a voluntary submission of the property to the arresting officer.[3] Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); United States v. Baldocci, 42 F.2d 567 (N.D.Cal.1930). The fact that Cradle admitted that the goods in his mother's apartment were stolen is irrelevant to the question whether the search and seizure was lawful. As stated in both the McDonald and Trupiano cases, the Fourth Amendment protects the guilty and the innocent alike. An illegal search and seizure cannot be justified because the property found is stolen. The search must be valid *ab initio*. In Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), it was attempted to justify a search under an invalid warrant upon the ground that it was successful in revealing evidence

2. On this subject officer Gosman testified as follows:
   "Q Did you find out who these things belonged to?
   "A I asked the defendant if he had the property there that they had stolen, and he said they did have, and then he brought this stuff over.
   　　　*　　*　　*
   "THE WITNESS [Gosman]: We got all the property together——
   "THE COURT: How did you get the property?
   "THE WITNESS: I asked him if the combination setting in the corner had come from the house where he had taken the other property, and he said yes, so we placed that in the center of the room, and I said, 'How about the rest of the property,' so he went into the kitchen he got an electric hot-plate and he brought that in, and a woman's suit and a suitcase full of clothing, and a table lamp."

3. Cradle testified:
   "THE COURT: Then he [Gosman] asked you where were the goods that you had taken?
   "THE WITNESS: Yes, sir.
   "THE COURT: And where were they?
   "THE WITNESS: They were in the front room.
   "THE COURT: Where were they?
   "THE WITNESS: They were in my front room.
   "THE COURT: And you went and got them?
   "THE WITNESS: Yes, sir.
   "By MR. NOBLE:
   "Q Why did you go get them?
   "A Because he told me to."

of violation of a Federal statute. The Court said:

> Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this Court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed. . . . [273 U. S. at pages 29–30, 47 S.Ct. at page 248]

In respect of the second point made by the majority: It is not the law that a search otherwise unlawful is made lawful merely because it was incidental to a lawful arrest. In the Trupiano case the Supreme Court said:

> A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest. The mere fact that there is a valid arrest does not *ipso facto* legalize a search or seizure without a warrant. Carroll v. United States, supra [267 U.S. 132 (1925)], 158 [45 S.Ct. 280]. Otherwise the exception swallows the general principle, making a search warrant completely unnecessary wherever there is a lawful arrest. And so there must be some other factor in the situation that would make it unreasonable or impracticable to require the arresting officer to equip himself with a search warrant. In the case before us, however, no reason whatever has been shown why the arresting officers could not have armed themselves during all the weeks of their surveillance of the locus with a duly obtained search warrant— no reason, that is, except indifference to the legal process for search and seizure which the Constitution contemplated. [334 U.S. at page 708, 68 S.Ct. at page 1234]

Also in the Trupiano case the Supreme Court distinguished Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L. Ed. 1399 (1947), which is relied upon by the majority in the instant case, saying:

> We do not take occasion here to reexamine the situation involved in Harris v. United States, supra. The instant case relates only to the seizure of contraband the existence and precise nature and location of which the law enforcement officers were aware long before making the lawful arrest. That circumstance was wholly lacking in the Harris case, which was concerned with the permissible scope of a general search without a warrant as an incident to a lawful arrest. Moreover, the Harris case dealt with the seizure of Government property which could not have been the subject of a prior search warrant, it having been found unexpectedly during the course of a search. In contrast, the contraband seized in this case could easily have been specified in a prior search warrant. These factual differences may or may not be of significance so far as general principles are concerned. But the differences are enough to justify confining ourselves to the precise facts of this case, leaving it to another day to test the Harris situation by the rule that search warrants are to be obtained and used wherever reasonably practicable. [334 U.S. at pages 708–709, 68 S.Ct. at page 1234]

In the instant case the officers were aware that property had been stolen, that the probable thieves were Cradle and Agnes Biggs, and that the property would probably be found where they were living. It cannot be said that it was not "reasonably practicable" for the officers to obtain a search warrant in advance of the search.

The McDonald, Trupiano and Johnson cases rule that in all searches and seizures by police officers there must be a lawful search warrant unless the officers justify the absence of such a warrant by exceptional circumstances, for example, the imminence of immediate harm or of immediate removal or destruction of property which could be used as evidence. There was no justification for lack of a search warrant in the instant case, for, as said above, at the time of the search and seizure Cradle was not fleeing or seeking to escape, and the property seized was not in the process of destruction or likely to be destroyed. This absence of justification for the lack of a search warrant is in my view fatal to the position of the Government and the majority in the instant case.

Concerning the third point made by the majority—that even if the search was unlawful Cradle was not prejudiced because the record does not show that any article of property recovered from the apartment of Cradle's mother was actually introduced in evidence against Cradle at the trial: With deference to my colleagues, I think that the record does show that some of the articles introduced in evidence were seized at the apartment of Cradle's mother. According to the testimony of officer Berry all of the property stolen from the Fiordelises was recovered from the home of Cradle's mother except a radio which was

found in a second-hand store, and a ballerina skirt and lady's jacket, which were found at the home of Agnes Biggs' sister.[4] The Government introduced in evidence a "portable radio" (Exhibit 1), a "sofa pillow" or "couch pillow" (Exhibit 2), and "two ladies' skirts and a lady's dress, a black and white print dress" (Exhibit 3).[5] The portable radio introduced in evidence as Exhibit 1 was not recovered from the home of Cradle's mother because the radio found there, described by officer Gosman as "a large combination two-tone radio,"[6] was described by officer Berry as included within property which after its recovery was with the consent of the District Attorney turned over to Mr. and Mrs. Fiordelise because "it was of such a nature, like a sofa, studio couch, and a large floor model radio that would be hard to produce in court."[7] Hence the

4. Officer Berry testified:

"Q What did the defendant Cradle say then in regard to these alleged larcenies and housebreakings?

\* \* \*

"A He told us where the property was, and part of it had been recovered at the time of the arrest, and he told us the rest of it was over in the home of his mother, and we later recovered it.

\* \* \*

"Q You said you recovered the balance of this property. Where did you recover that?

"A We recovered the major part of it at 1815 Corcoran Street, at the home of the defendant Cradle's mother, and some of it was recovered from a sister of the defendant Biggs on Lowry Place, Northeast.

"One item, a radio, was recovered from a second-hand store where the defendant's sister had pawned or sold it.

\* \* \*

"Q Officer, what was it you recovered from the home of the sister of the defendant Biggs?

"A It was a ballerina skirt and I believe a jacket, a lady's jacket, if I remember correctly."

5. Mr. Fiordelise testified as follows:

"Q Mr. Fiordelise, I show you Government's Exhibit 1 for Identification, a portable radio, and ask you if you have ever seen that radio before?

"A Yes.

\* \* \*

"Q Where was it on the night of the alleged larceny?

"A On Wyoming Street.

\* \* \*

"Q I show you Government's Exhibit 2 for Identification, which appears to be a sofa pillow, a couch pillow. Have you ever seen that before?

"A On Hobart Street.

\* \* \*

"Q I show you Government's Exhibit 3, consisting of 3 articles, two ladies' skirts and a lady's dress, a black and white print dress, and ask you if you have ever seen those before?

"A Yes, sir, on Hobart Street and Wyoming Street.

"Q To whom did they belong?

"A They belonged to my wife.

"THE COURT: Where were they on the 16th of February?

"THE WITNESS: On Wyoming Street.

"THE COURT: That is your wife's property?

"THE WITNESS: Yes, sir.

"THE COURT: And the radio is yours?

"THE WITNESS: That is right.

"THE COURT: And the clothes belong to you and your wife?

"THE WITNESS: That is right."

The record shows that Exhibits 1, 2 and 3 were received in evidence.

6. Officer Gosman testified:

"Q Were you present when any property alleged to have been taken in these cases was recovered?

"A Yes.

"Q And where was that?

"A It was in the apartment that they were living in.

"Q And when was it recovered?

"A It was recovered that night, part of it was.

"Q And do you recall what it was you recovered there?

"A Yes, a large combination two-tone radio; a table lamp; a woman's blue suit; woman's black raincoat; a suitcase of assorted men's and women's clothing, and a table lamp I believe.

"Q Did you find out who these things belonged to?

"A I asked the defendant if he had the property there that they had stolen, and he said they did have, and then he brought this stuff over."

7. Officer Berry testified:

"Q Let me ask you this: Was any of

portable radio introduced in evidence as Exhibit 1 must have been the radio recovered from the second-hand store. But the sofa pillow introduced in evidence as Exhibit 2 and the lady's black and white print dress, one of the items introduced in evidence as Exhibit 3, must have been recovered from the home of Cradle's mother because they are not included within the enumeration by officer Berry of the articles recovered from the second-hand store and the home of Agnes Biggs' sister. Finally, one of the two ladies' skirts introduced in evidence as a part of Exhibit 3 must have come from the home of Cradle's mother because again the property found at the second-hand store and at the home of Agnes Biggs' sister, as described by officer Berry, included but one lady's skirt. Thus it is demonstrated that as a matter of necessity some of the articles of stolen property introduced in evidence against Cradle, to wit, the sofa pillow, one lady's skirt and the lady's black and white print dress, were a part of the property which was recovered from the home of Cradle's mother. They were therefore the subject of the motion to suppress.[8]

I am of the view, therefore, in answer to the first question, that the search and seizure was unreasonable and unlawful.

## II.

The guarantee of the Fourth Amendment against unreasonable searches and seizures does not extend to all. As said by Circuit Judge Augustus N. Hand in United States v. Messina, 36 F.2d 699, 700–701 (C.C.A.2d 1929), a motion to suppress "could not prevail by one with no interest in the premises searched or the property seized. He should at least be dwelling there. . . ."[9] In the instant case Cradle claimed no interest in the property seized; on being questioned by the officers, he admitted that he had stolen it. In the premises, however, he had, according to the uncontradicted evidence, a domiciliary interest. On the motion to suppress he testified, in respect of his place of abode at the time of the arrest and search and seizure, as follows:

THE COURT: Where do you live?
THE WITNESS: I was living with my mother at the time.
THE COURT: Where do you live?
THE WITNESS: I live with my mother.
THE COURT: Then you were not spending the night with her because she was sick?
THE WITNESS: Yes.
THE COURT: You live there all the time, don't you?
THE WITNESS: Yes, sir.

Thus Cradle's home was at the time in question his mother's home. Such a dom-

---

this property turned over to the complainants, Mr. and Mrs. Fiordelise?

"A Yes, the major portion of it was turned over. We received permission from the District Attorney's office to do so.

"MR. MILLER: I object to what the District Attorney's office did.

"THE COURT: No, he said it was turned over to them because the District Attorney's Office had no objection to it being returned.

"THE WITNESS: Because the major portion of it was of such a nature, like a sofa, studio couch, and a large floor model radio that would be hard to produce in court."

8. The motion to suppress was in the following terms:
"Comes now the defendants, Lorenzo McCoy Cradle and Agnes E. Biggs, by their attorneys and move this honorable court to suppress the evidence seized from him and from the residence of his mother, Martha Cradle, on or about

February 16, 1948 and as grounds therefore [sic] say:
"1. That the search of the home of Martha Cradle, mother of the defendant Lorenzo McCoy Cradle, was illegal.
"2. The seizure of the defendant's property was illegal.
"3. And for such further reasons as may appear from the record and urged upon the Court at the time of the hearing of this motion."

9. The following authorities were cited: "Haywood v. United States (C.C.A.) 268 F. 795, at page 803, 804; Lusco v. United States (C.C.A.) 287 F. 69; Remus v. United States (C.C.A.) 291 F. 501 at page 510, 511; Schwartz v. United States (C.C.A.) 294 F. 528; Goldberg v. United States (C.C.A.) 297 F. 98, at page 101; Lewis v. United States (C.C.A.) 6 F.(2d) 222, at page 223; Rosenberg v. United States (C.C.A.) 15 F.(2d) 179; Graham v. United States (C.C.A.) 15 F. (2d) 740; Cantrell v. United States (C. C.A.) 15 F.(2d) 953." (36 F.2d at page 701).

iciliary interest in the premises is sufficient to warrant a motion to suppress. In Alvau v. United States, 33 F.2d 467 (C.C.A. 9th 1929), prohibition agents conducting a search without a warrant discovered Alvau and one Rossi to be operating an illegal still in Alvau's residence. On a showing that at the time of the search Rossi was living there, the court held that he had standing to move to suppress evidence discovered and seized in the course of the illegal search because "for the time being, as the guest or employee of its owner, he was domiciled in the residence." (33 F.2d at page 470)

In support of its contention that Cradle had no standing to move to suppress for use as evidence the property seized, the Government cites Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381 (1945); Shore v. United States, 60 App.D.C. 137, 49 F.2d 519 (1931); Shields v. United States, 58 App.D.C. 215, 26 F.2d 993 (1928); Kelley v. United States, 61 F.2d 843, 86 A.L.R. 338 (C.C.A. 8th 1932). Examination of these cases discloses that they do not support the Government's contention, since in them no interest appeared, in the party moving to suppress, in either the premises or the property involved. In the Gibson case, narcotic agents raided, while a party was in progress, an apartment owned by one O'Kelley. Gibson, a guest at the party, inadvertently dropped a marihuana cigarette from his pocket. This was seized by the agents; and a search of the apartment uncovered fifty such cigarettes in a paper bag. These were seized and introduced in evidence against the defendants in the case. The property seized, however, was not that of Gibson, but of O'Kelley. A motion to suppress made by Gibson was denied on the ground that he had no ownership or right to possession of either the premises searched or the property seized. In the Shore case, a motion to suppress was made by Shore in respect of trunks containing illicit liquor. But he claimed no property right in either the trunks or the liquor and for this reason the court held that he could not invoke the Fourth Amendment. The Shields case holds merely that the president of a corporation has no sufficient interest in the contents of its safe to invoke the Fourth Amendment against their allegedly illegal seizure. In the Kelley case, it was held that as a mere employee and custodian in the business of manufacturing illicit liquor upon the farm of one Hofelt, Kelley had no standing to invoke the Fourth Amendment in respect of the seizure of a still.

I am of the opinion, therefore, in answer to the second question, that Cradle had sufficient interest in the premises searched to bring him within the protection of the Fourth Amendment.

Accordingly, in my view the motion to suppress should have been granted and since it was not Cradle's convictions should not be sustained.